BRIGGS et ux. v. McBRIDE et al. (No. 1076.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 27, 1916.)

1. WITNESSES &#9758;139(9) — COMPETENCY—TESTIMONY AS TO TRANSACTIONS WITH PERSONS SINCE DECEASED—"HEIR."

Under Rev. St. 1911, art. 3690, providing that in actions by or against executors or administrators in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the decedent, unless called to testify thereto by the opposite party, and the provisions of the article shall extend to actions by or against heirs or legal representatives of a decedent arising out of any transaction with the decedent, testimony of plaintiffs, and consequently of defendants, in an action against a widow to establish a trust in property held by her in her own

right as survivor of the community and as a vendee of her children, is not inadmissible, since as to community property, the title to which is cast on the survivor by Rev. St. 1911, art. 2469, the surviving widow is not an "heir" of her husband within article 3690.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 590; Dec. Dig. &#9758;139(9).

For other definitions, see Words and Phrases, First and Second Series, Heir.]

2. LIMITATION OF ACTIONS &#9758;102(8)—COMPUTATION OF PERIOD—ACCRUAL OF CAUSE OF ACTION—ESTABLISHMENT OF TRUST.

Where plaintiffs, each about 60 years old, advanced $1,550 to their son-in-law, who contributed $1,450 for the purchase of real property, which the parties occupied jointly, but through mistake or fraud the deed to the property was taken in the name of the son-in-law alone, and was so recorded, and plaintiffs were frequently informed that the deed was in the name of the parties jointly, and never discovered the error till after the death of the son-in-law, limitations did not begin to run against an action to establish a trust in the land till their discovery of the omission of their names from the deed.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 502; Dec. Dig. &#9758;102(8).]

3. PLEADING &#9758;205(2) — DEMURRER—PLEADING GOOD IN PART.

Where a petition to establish a trust stated a cause of action at least as to one-half of 31/60 of the estate claimed by plaintiffs, a general demurrer should not be sustained.

[Ed. Note.—For other cases, see Pleading. Cent. Dig. § 492; Dec. Dig. &#9758;205(2).]

4. HUSBAND AND WIFE &#9758;248 — COMMUNITY PROPERTY—NATURE OF ESTATE.

The community status, like a partnership, has the elements of gains and losses based on the presumed labors of each, irrespective of the real industry of either spouse.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 880; Dec. Dig. &#9758;248.]

5. HUSBAND AND WIFE &#9758;265—COMMUNITY PROPERTY—MANAGEMENT AND DISPOSITION.

The husband has the real management, disposition, and control of the community estate, with the exception of the conveyance of the homestead, or when the wife is abandoned by the husband, or where the property is conveyed in fraud of the wife.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 896, 917–924; Dec. Dig. &#9758;265.]

Appeal from District Court, Deaf Smith County; D. B. Hill, Judge.

Action by E. R. Briggs and wife against Lillie McBride and others. From a judgment for defendants, plaintiffs appeal. Reversed and remanded.

Russell & Dameron, of Hereford, for appellants. Ben H. Stone and E. T. Miller, both of Amarillo, for appellees.

HENDRICKS, J. E. R. Briggs and C. E. Briggs, husband and wife, sued Lillie McBride, their daughter, on allegations in a second amended original petition, in substance as follows: That on or about April 17, 1909, the plaintiffs and one Louis McBride, their son-in-law, purchased certain residence lots in the town of Hereford, Deaf

Smith county, Tex.; that plaintiffs advanced and paid on said property the sum of $1,-550, and that Louis McBride contributed the sum of $1,450, a total consideration of $3,-000, paid in cash for the same; that said property was purchased as a home for all of the parties, who took immediate possession, after the purchase, for that purpose. Plaintiffs further aver that the sum advanced by them, $1,550, was delivered to Louis McBride upon an oral agreement that McBride would use the money for the purchase of the property and take a deed to the same in the joint names of the plaintiffs and McBride, but, through inadvertence and mistake of the scrivener, the names of the plaintiffs were omitted from the deed; that McBride accepted the deed, placing the same of record, and did not know that the names of plaintiffs had been so omitted, but believed that their names had been inserted in said instrument; that McBride informed the plaintiffs that he had taken the deed in the joint names of all the parties, and that all of said parties believed that said deed contained the names of all up to the date of the death of Louis McBride, which occurred on or about March 18, 1913; that McBride repeatedly informed the plaintiffs, and stated to other parties, that they and he were joint owners of the property, and that McBride never in any manner held the property adversely to the plaintiffs or repudiated their claim of ownership. It is also averred that Lillie McBride, the defendant herein, and the daughter of plaintiffs, and Louis McBride, resided together for a number of years, and that plaintiffs had the utmost confidence in the integrity of their son-in-law, and the latter had been intrusted with numerous business affairs of the plaintiffs, and had been "in the habit of conducting plaintiffs' business"; that when McBride informed them the deed had been taken in the joint names of all the parties, they never examined the deed records to ascertain if such were a fact, and never had any notice or knowledge that their names did not appear in the deed until on or about August 15, 1914, after the death of McBride, at which time the plaintiffs discovered the error, and demanded of defendant Lillie McBride a conveyance of their interest, which was refused. Immediately following the allegations expressing the preceding facts, it is alleged:

"Plaintiffs will show that immediately upon making said $1,550 payment on said property, as aforesaid, they went into possession of the said property and so continued to reside on and possess said property and pay the taxes thereon until some time in the year of 1914, as aforesaid."

There are further averments in the nature of an alternative plea, rather hard to construe the extent and reach of the same, in effect that if at any time Louis McBride discovered the omission of plaintiffs' names from the deed, he expressly stated that such fact was an error in drawing the deed, and that plaintiffs in fact owned an undivided interest in the property, and that he was holding same in trust for them to the extent of their interest. Following, however, the last averment, it is stated that they never at any time had the deed in their possession, and again repeated that they did not know the contents, and, reposing the utmost confidence in McBride, on account of his information to them as to the nature of the deed, and on account of the fiduciary relationship, they had no reason to disbelieve McBride's statements.

It was also stated "that if McBride intended to take said deed in his name, for the purpose of defrauding these plaintiffs, they never had any notice of the same until about August 14, 1915, and that they were prevented from learning of such facts by reason of the concealment and misstatements of said McBride," and relied on the same and had no reasonable way of learning to the contrary.

It was averred that Louis McBride left surviving him "as his sole and only heirs, the defendant herein Lillie McBride and two children, Clara McBride and L. E. McBride. Thereafter, about August 1, 1914, the said children * * * by duly executed deed, conveyed their interest in said property to the defendant herein Lillie McBride."

The trial court sustained a general demurrer to plaintiff's petition and two special exceptions, respectively setting up the two and four years' statutes of limitations.

As affecting the nature and character of the estate and the source of title charged in the petition, as held by Lillie McBride, we think, in legal effect, the same is averred as follows: That plaintiffs furnished $31/_{60}$ and their son-in-law Louis McBride $29/_{60}$ of the purchase money of the property upon an oral agreement for the joint acquisition of same; that upon the death of Louis McBride the legal title only to one-half of this $29/_{60}$ of said property was in the wife after the death of Louis McBride, in her own right, subject to proper proof affording a divestiture. This results because the property is presumptively community. If it had been community property without any charge of an equitable estate, the children would only have succeeded to one half, with the other half vesting in the wife by virtue of the community principle, and Rev. St. art. 2469, casting on the survivor one half of said community estate.

[1] It is insisted, and seriously argued, in this cause that the plaintiffs' second amended original petition discloses upon its face that the trust sought to be established by the plaintiffs in error must be established by their testimony as to statements made by them to Louis McBride, and by the latter to them, which, under article 3690 of the Revised Statutes would be inadmissible.

"In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither

party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent." Article 3960.

We cannot conceive that the learned trial judge sustained the general demurrer upon such a theory. The petition does not negative, nor does it disclose, wholly the source of the proof to sustain the alleged equitable estate. Neither do we see how a trial judge could anticipate that either party would not call the opposite party to the witness stand.

In view of the above analysis of the status of the estate charged in the petition as being claimed by Lillie McBride, and on account of another trial, we hold, in the condition of this record, the plaintiffs' testimony, and consequently defendant's, would be admissible. Wootters v. Hale, 83 Tex. 563, 19 S. W. 134; Harris v. Warlick, 42 S. W. 356; Evans v. Scott, 97 S. W. 117; Edwards v. White, 120 S. W. 916; Harry v. Hamilton, 154 S. W. 637; Field v. Field, 39 Tex. Civ. App. 5, 87 S. W. 726; Wilmurth v. Tompkins et al., 53 S. W. 833.

As to the particular property claimed in the petition, though stated that Lillie McBride is an heir, she was not an heir of her husband in a strict sense of heirship to the one-half of the 31/60 of said estate though title was cast by article 2469. The action is not against her as executrix or administratrix, nor is she asserting any right to the property as the heir of her deceased husband; neither is it shown that she was administering their community estate under the statute as his surviving wife. As a vendee from the children of the legal title to one-half of the $^{31}/_{60}$ of said alleged trust estate, she was in the attitude of a purchaser.

The condition of the title, upon this record, as it would have been litigated upon the pleading, was one in Mrs. Lillie McBride, in her own right: First by virtue of her half of the community; and, second, as a vendee from the children. Some of the above authorities hold, and the others are persuasive, that testimony to establish such a claim, when such a condition is disclosed, is not excluded by the terms of the statute mentioned.

[2] On account of the averments of the petition it may be a little difficult to properly characterize the nature of the trust charged against the estate in question, though probably it should be designated as a constructive trust. The oral agreement to jointly acquire the property and to have the conveyance express the joint interest, was not fulfilled, either by mistake or inadvertence of the scrivener, or fraud by Louis McBride. There are some general expressions in the opinions that the statute of limitations begins to run from the time that a constructive trust, or one

ex maleficio, was created. However, such a rule is subject to exceptions, and this case would illustrate an exception. The relationship of the parties; the age of the beneficiaries, about 60 years; the management of plaintiffs' business by the son-in-law; the trust and confidence reposed in him by them; the reliance by them upon his statements; their joint residence on the property with the son-in-law to the time of his death, and inferably with the daughter after his decease; and such confidence and trust remaining until the actual discovery in August, 1914. It may be that the allegations of excuse in detail are not quite as full as careful pleading should dictate, but we think they are full enough against a general demurrer.

If a plaintiff's claim of the land is against the possessor of a legal title as held in constructive trust for his benefit, it may be that the defendant may argue that the statute of limitations applies from the time of the creation of the trust, without showing that he has repudiated the trust. Oaks v. West, 64 S. W. 1034. However, if plaintiffs show that, without fault on their part, they are ignorant of facts on account of having been lulled into security, the statute would not apply. The ordinary rule is:

"If * * * the act of the trustee is not inconsistent with any right of the beneficiary which is known to the latter, then there is not cause for his bringing a suit; there being no violation of any known right." Rice v. Ward, 92 Tex. 704, 708, 51 S. W. 844, 845.

We mean as applied to express or resulting trusts.

Justice Moore held that under circumstances showing the possession of certain negroes by a father in a fiduciary capacity as a natural guardian of the daughter, there must be a distinct repudiation of her title brought to her knowledge, and such repudiation must have been persisted in throughout the term of prescription; that equivocal acts, first in denial and then in recognition, would not constitute such a repudiation. Lewis v. Castleman, 27 Tex. 422. Chief Justice Willie said:

"In case of a constructive trust, which is born of fraud, and which presupposes from its beginning an adverse claim of right on the part of the trustee by implication, the statute will commence to run from the period at which the cestui que trust could have indicated his right by action or otherwise. Hunter v. Hubbard, 26 Tex. 537; Anderson v. Stewart, 15 Tex. 285; Carlisle v. Hart, 27 Tex. 350. But even in such cases the trustee must bring himself clearly within the position of a continued and consistent adverse claimant (Grumbles v. Grumbles, 17 Tex. 472) and the cestui que trust must have no reasonable excuse for failing to prosecute his claim within a proper time. McKin v. Williams, 48 Tex. 89." M. S. & R. Cole v. C. W. Noble, 63 Tex. on page 434.

Judge Willie was dealing with a resulting trust, and said:

"In this case S. F. Noble, Jr., set up no claim to hold the land adversely to his brother; and, after his death, his personal representatives

in effect declined to make such claim by failing to administer the lots as part of his estate; and his widow did not repudiate the trust until a short time before the commencement of this suit. These circumstances were calculated to lull the appellee into the belief that the trust was still recognized by those claiming under the original trustee; and as the opposing claimants, if any existed, were connected with him by blood and affinity, we cannot say that he was bound to prosecute his rights at any time before their disavowal was brought to his notice in such manner as to claim his attention." 63 Tex. pages 434, 435.

The case of Davis v. Davis, 20 Tex. Civ. App. 311, 49 S. W. 726, is practically the same as the present case. Two brothers were partners; one residing in Kentucky and the other in Texas. The latter purchased the land with partnership funds. He thereafterward, in writing and verbally, acknowledged that the land was the property of himself and brother. However, subsequently, he executed a deed conveying the land to his wife, which was promptly recorded. "The evidence shows an act of repudiation occurring in 1877, by the conveyance of the tract by Geo. R. Davis to his wife, the deed being, as stated, at once placed on record. Neither this or another act of repudiation would start the statute to run until the party affected knew of it, or until the circumstances reasonably charged him with knowledge of it." 20 Tex. Civ. App. page 313, 49 S. W. 728. Writ of error denied.

Chief Justice James also said that the conduct of the trustee, the nonresidence of his brother, and the relations of the parties, would excuse the ascertainment of the act of repudiation.

[3] We were at first concerned with the thought that, on account of the petition averring that Lillie McBride received a part of the land from Louis McBride's heirs, by duly executed conveyance, without allegations that she had notice or paid a valuable consideration, and the burden being upon the plaintiff to aver and prove such facts, this court should discuss that subject. The complexity of the problem arose on account of the fact that Mrs. McBride was the wife and partner in community at the time the husband acquired the property; hence would notice to him be constructive notice to her, by virtue of the community and the domestic relations? If we are correct, however, that the wife is vested with the legal title to one-half of the 31/60 of the estate claimed by plaintiffs, in any event, the trial court should not have sustained the general demurrer. As to so much of said estate she would stand in the shoes of her husband. We referred such a question of constructive notice to both parties for a new brief and additional argument on that subject.

The cases of Stephens v. Herron, 99 Tex. 63, 87 S. W. 326, and Pearce v. Jackson, 61 Tex. 645, cited by appellees in their supplemental brief, are not wholly persuasive that a wife, under conditions exhibited in this record, could be an innocent purchaser from her husband of a trust estate, or from his heirs after descent was cast, on account of the imputation of notice solely resulting from the community principle. In the former case, on a careful analysis of the facts, the wife knew that the property had been conveyed to another grantee, though the deed was unrecorded, and the consideration for the conveyance by the husband to the wife was in reality community funds.

The case of Stephens v. Herron, supra, was one where the wife purchased from the husband an estate. The opinion does not disclose that it was community. Previous to this purchase she had joined with the husband in an instrument appointing an attorney in fact, and such agent had thereafter conveyed the property, and his grantee had failed to place the deed of record. The Court of Civil Appeals simply certified the question to the Supreme Court whether the fact that she had joined in the power of attorney imputed notice to her of the rights of the holder of the unrecorded deed from the attorney in fact, and the Supreme Court answered negatively. Bates on Partnership says:

"If the trustee, without his copartners knowing that the money is held in trust, uses it to pay the debts of the firm, or applies it to other partnership uses, or lends it to the firm or puts it in as capital, the cestui que trust does not become a creditor of the firm, and can neither maintain an action against them or prove against the joint estate in bankruptcy. . * * * The knowledge of the guilty partner is not the knowledge of the firm because it is outside of the firm's business"

—and states that those partners who were cognizant only of the misapplication of the trust fund are alone chargeable. Vol. 1, § 481, pp. 500, 501.

Perry, citing some of the cases cited by Bates, says, in a note to section 846:

"The weight of authority seems to be to the effect that when a partner turns over to the firm money which is apparently his own, or uses it to pay firm debts, without notice to his co-partner of any trust attaching to it, and he is given credit for it as his own money, the firm is given protection of a bona fide taker for value without notice." Perry on Trusts, vol. 2, § 846, p. 1385 (note).

This doctrine is on the theory that the misapplication, by the individual partner, when a trustee, of trust funds, is a tort which is outside the scope of the partnership. The comment by Perry is, though, that this question has never been worked out very satisfactorily.

[4, 5] The community status, of course, has been likened to a partnership. It has the elements of gains and losses, based upon the presumed labors of each, irrespective of the real industry of either spouse. As to community property, though, the wife is practically a passive partner, viewing her powers to act for the community, except probably where she acts as the agent, or implied agent, of the husband for the community, or for the family. The husband has the real management, disposi-

tion, and control, with the exception of the conveyance of the homestead, or when abandoned by the husband, or except where the property is conveyed in fraud of the wife. The liability of the partnership and of the individual partners, in ordinary partnerships, is worked out through one of agency by virtue of a contract. The wife, though, is denied the full supervision and management, as well as the powers, of an agent inhering ordinarily in partnerships. The marriage, of course, in a sense is a contract, but the law thereafter impresses the community principle, and the community gains and losses as a result, with the husband as the dominant partner. The wife is not personally liable; neither is her separate estate, for the community debts, or the husband's torts. As to the acquisitions aside from her industry falling into the community, when to sell or buy, or when to trade, or how much, or how little, in law she is negligible; her dictation is entirely feminine. Concerning this question, it might be thought that in an ordinary case, where one trusts the husband with the legal title to property, which carries with it the apparent title to the whole estate, if a wife in reality, without notice, pays value out of her separate estate, she should be entitled to the same as any other innocent purchaser. However, on the other hand, the husband, if he should convey to the wife such an estate, and defraud the cestui que trust, or convey to some other innocent purchaser, he would be liable for the value of the property, and in the last instance we know, and in the first instance it would seem, that the community estate would have to respond. If so, we would have the anomaly of, the wife being an innocent purchaser of property on account of which her community property is liable, through the very wrong which produces, with her innocence, her estate. If the property is presumptively community, it may be considered, as a practical question, she would only purchase, and pay for, the husband's interest; ostensibly she owns the other half.

It is true that Justice Stayton's language, in the case of Pearce v. Jackson, supra, is subject to the construction that he thought a wife could become an innocent purchaser against the undisclosed interests of another if she had no notice and paid value. The language of such a great judge has affirmative persuasion, but the facts of the particular case, when analyzed, are of a negative value.

We consider the question as a matter of policy, and a rule of property, one of serious import, and its correct solution, though a desirable result, quite difficult as a legal question. Such a question probably may not arise on another trial in view of our opinion, if correct, on other legal merits arising upon the record, and we will not decide it.

The district court should not have sustained the general demurrer to the petition, or the special exceptions on limitation, as the allegations present sufficient grounds of excuse affecting the question of diligence for the lack of knowledge of the plaintiffs.

The case is reversed and remanded.