## METROPOLITAN LIFE INS. CO. v. BAKER et al.

### Civ. No. 4779.

United States District Court
N. D. Texas, Dallas Division.

Sept. 24, 1952.

Leake, Henry, Golden & Burrow, Dallas, Tex., for plaintiff.

Hassell & Hassell, Dallas, Tex., for Natalie Kemp Baker and J. F. Baker, Mary Lou Smith and George R. Smith, defendants.

**2**

Wilson & Wilson, Wichita Falls, Tex., for Martha Maud Kemp, defendant.

ATWELL, Chief Judge.

The Magnolia Petroleum Company of Dallas, Texas, caused to be issued to its employee George G. Kemp, a policy of insurance in the interpleading plaintiff and paid the premiums on such policy out of the salary of employee Kemp. The policy was payable to his mother who died, and he then made his wife, Martha Maud Kemp, in 1943, the beneficiary, and in 1946 he changed the beneficiary to two of his sisters, to-wit: Natalie Kemp Baker and Mary Lou Smith.

This contest is between the two last named, and his wife, Martha Maud Kemp.

George G. Kemp, the employee, died after making the two sisters beneficiaries, and his widow and the two sisters are the claimants for the proceeds of the policy.

The plaintiff insurance company, not knowing where the payment should go as between the three, deposited the money in this court and interpleaded the claimants.

The wife claims that the change made by her husband from herself as beneficiary to the two sisters as beneficiaries, was a fraud on her rights, since the premiums that were paid by the employer, Magnolia Petroleum Company were made from earnings of their employee Kemp, and they were, therefore, community property payments and the policy resulting from such payments was community property.

This question must be settled by the law of Texas. Gholson v. Metropolitan Life Insurance Company, D.C., 92 F. Supp. 858. That case, however, went off on the intention of the insured to make a change of beneficiaries which he never did.

It would seem that since, in Texas, the husband has the right to make use of personal property without consultation or joinder by his wife, that the change of beneficiaries in a policy of insurance upon his life would be binding, and the beneficiary whom he had named would be entitled to the proceeds of the policy, upon his death, in the absence of any fraud.

Volunteer State Life Insurance Company v. Hardin, 145 Tex. 245, 197 S.W.2d 105, 107, 168 A.L.R. 337. That case is by the Supreme Court of Texas, which clearly defines the rule to be that "where the insured reserves the right to change the beneficiary in [his life] policy, the beneficiary therein obtains no vested interest in the proceeds of the policy prior to the death of the insured. The insured may change the beneficiary at will and thereby divest a prior beneficiary of all interest in the proceeds of the policy."

The case arose out of facts which show that the insured named his wife as beneficiary first, the right being reserved to change the beneficiary, and the premiums were paid from community property, and that under such facts neither the wife nor the community estate acquired any vested interest in the proceeds of the policy, as distinguished from the cash surrender value.

In Aaron v. Aaron, Tex.Civ.App. 173 S.W.2d 310, it was held that the insurance policies which were taken out by the insured prior to his marriage, were the insured's separate property, and he could give the benefits thereunder by parol to anyone having an interest in his life.

It will be noticed that in the case at bar the policy was taken out before Kemp married Martha Maud Kemp. His first beneficiary, as I have said, was his mother who had died.

The case of Womack v. Womack, 141 Tex. 299, 172 S.W.2d 307, by Justice Sharp of the Supreme Court, merely collects the authorities that bear upon the identical question that the court was considering, as well as upon borderline cases, but only decided what the ordinary legal signification of the word "property," extends to. viz.: every species of valuable right and interest, including real and personal property. Therefore, the cash surrender value of policies would be community property, on the divorce of the parties, where the policy was obtained during the marriage and all premiums were paid from community funds.

I have heard no evidence whatever of any fraud. That can only be fraud-

ulent which is intended so to be, and may not be presumed. It is an essential element of an action, that such intent must be proved by the party alleging it. In a generic sense, it is either to cheat, or, to deceive another. It is difficult to think of fraud without a false suggestion, or, a suppression of the truth. It cannot exist without a breach of legal or equitable duty. And there can be no fraud by a person who does that which he has a legal right to do.

■ The facts, which have been largely stipulated, and which I have found to be the facts as above recited, show the amount of premiums that were paid by Kemp upon his policy before he married, and also show the amount of property which he left, and which had been accumulated by he and his present wife, before his death, but I know of no appropriate way to separate and divide and figure what, if anything, is left for the wife under the community theory, because as I have already indicated, he had a right to do what he did do, since the contract of insurance gave him that right, and there is, therefore, no fraud and reason for depriving his sisters of that which legitimately belongs to them. Again, he had a policy on his life which was, and, is payable to the wife, in another company. She also received the home and other property.