**KEMP v. METROPOLITAN LIFE INS. CO. et al.**

No. 14368.

United States Court of Appeals Fifth Circuit.

July 24, 1953.

Rehearing Denied Aug. 24, 1953.

858

Lou Smith, were entitled to all or any part of the proceeds of an insurance policy issued on the life of George G. Kemp, deceased. The proceeds of the policy, $12,-638.14, were paid into court and the insurance company discharged. The case here, as it was in the trial court, is solely between the other appellees, who were sisters of the insured, named in the policy as beneficiaries, and hereinafter sometimes referred to as the appellees, and the appellant, who was the widow of the insured. It is the contention of the appellant that the insurance policy was community property and that the naming of her husband's sisters as beneficiaries constituted a gift by her deceased husband in fraud of her rights. The case was tried to the court without a jury and judgment for the entire proceeds of the policy was entered for the appellees.

There is no material dispute in the evidence. Most of the facts were stipulated and only two witnesses testified, Mrs. Martha Maud Kemp, the widow, and Mrs. Laura Savage, one of her friends. The insurance proceeds came from a certificate issued under an Annuities and Insurance Plan of Magnolia Petroleum Company. George G. Kemp was employed by Magnolia Petroleum Company February 15, 1919, and continued in such employment until the date of his retirement on January 1, 1952. He died intestate on July 3, 1952. The date of Mr. Kemp's entry into the Magnolia Petroleum Company's Annuities & Insurance Plan was March 1, 1931, when that plan was established. He and the appellant were married on the 29th day of September, 1942, and lived together as husband and wife in Wichita County, Texas, until his death. There were no children.

While Mr. Kemp had entered into the Annuities & Insurance Plan on March 1, 1931, the certificate in question, numbered 6498, was issued by Metropolitan Life Insurance Company on January 1, 1940, and in that certificate George G. Kemp reserved the right to change the beneficiary. Mrs. Willie Kemp, mother of George G. Kemp, originally was named beneficiary. On April 1, 1943, about six months after the marriage, George G. Kemp changed the beneficiary in said certificate to his wife,

Lloyd Tarlton Wilson, Wichita Falls, Tex., Wilson & Wilson, Wichita Falls, Tex., for appellant.

J. W. Hassell, Jr., and Hawkins Golden, Dallas, Tex., Hassell & Hassell, Dallas, Tex., for appellees.

Before HOLMES, BORAH, and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Metropolitan Life Insurance Company filed a bill of interpleader to determine whether appellant, Martha Maud Kemp, or appellees, Natalie Kemp Baker and Mary

Martha Maud Kemp. The mother of George G. Kemp, Mrs. Willie Kemp, died March 26, 1946. Thereafter on December 2, 1946, George G. Kemp again changed the beneficiary in said certificate from Martha Maud Kemp to his sisters, Natalie Kemp, now Natalie Kemp Baker, and Mary Lou Smith. There were no further changes of the beneficiaries prior to his death.

The community estate and the financial condition of George G. Kemp and his wife, Martha Maud Kemp, at the time of the husband's death may be briefly described in this paragraph. George G. Kemp left one other policy of life insurance with Southland Life Insurance Company in the original face amount of $2,500.00, against which he had borrowed in his lifetime approximately $500.00. This policy was payable in three annual interest installments of $46.19, each payable July 22, 1953, 1954 and 1955, and twenty-five monthly installments of $73.90 each, commencing August 22, 1955, with a final and 26th installment of $44.34. The installments were payable to the widow, Martha Maud Kemp, and in the event of her death prior to receiving the full number of installments, the remaining installments were payable to one of the sisters, Natalie Kemp Baker. Both policies of insurance were procured by George G. Kemp prior to his marriage and until the time of his marriage the premiums on both were paid out of his separate estate and thereafter were paid from the community income. George G. Kemp left no separate estate, but left as community property cash on hand and in banks in the amount of $3,143.47, against which the widow asserts claims on account of advancements of her separate funds in the amount of $1,320.00. He left as community property the home in which he and Martha Maud Kemp lived at Burkburnett, Texas, consisting of a five room cottage located upon approximately one-half acre of land together with the furnishings. The purchase price of the house and lot had been $3,000.00. A part of the lot had been sold off and the widow testified that the house had become old and in bad condition, but that she supposed she could get $4,000.00 or $5,000.00 for the property. There was no other testimony as to its value. The widow, Martha Maud Kemp, had possession of a 1950 Pontiac automobile which she claimed as her separate property. George G. Kemp owed no debts at the time of his death, except for current bills in the sum of approximately $400.00. His funeral expenses amounting to $1,283.75 remain unpaid.

The widow, Martha Maud Kemp, undertook to testify to what George G. Kemp had said to her at the time he changed the beneficiary from his mother to her on April 1, 1943. The court sustained an objection to this testimony as hearsay and as prohibited under the statute, Article 3716, Rev. Civ.Statutes of Texas.[1] That ruling is the basis of one of the specifications of error. The widow further testified that she did not know anything at all about a subsequent change being thereafter made in the beneficiary from her to the two sisters; that it was after Mr. Kemp's death that she first learned of that change having been made.

The other witness, Mrs. Laura Savage, testified that she was present at the Kemp home after Mr. Kemp's death when the policy of insurance was found, and it was discovered that the beneficiary had been changed from the widow to the sisters. She was asked whether she had any discussion with Mr. Kemp with reference to insurance policies at anytime in the earlier part of 1952, and further "Did you know whether or not Mr. Kemp had given this policy to his wife?" The court sustained objections to each of these questions and those rulings are also assigned as error.

1. "Art. 3716. In actions by or against executors, etc.

"In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transactions with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

At the conclusion of argument by counsel, the District Court rendered a brief opinion and entered judgment for the appellees, sisters of the insured, the beneficiaries named in the policy.

It is now settled that a policy of life insurance is regarded in Texas as property.[2] Whether the policy in this case, taken out before the insured's marriage, is community property presents a more difficult question. Without more, it is doubtful that such a policy comes within the Texas Statute prescribing the property that shall be considered community property.[3] The problem has had varying solutions in different community property states.[4]

■ The appellant insists that when the insured, after his marriage, changed the beneficiary to his wife, he made a gift of this insurance policy, if not to the wife's separate estate, at least to the community estate. The husband could make a parol gift of such a policy, even though as to the insurance company he failed formally to relinquish his right to change the beneficiary. Aaron v. Aaron, Tex.Civ.App., 173 S. W.2d 310, 313. Such failure, however, made his action ambiguous as to whether

2. In Womack v. Womack, 141 Tex. 299, 172 S.W.2d 307, 308, the court held:
"It is true that in the early decisions of the courts of this country, including the decisions of the courts of this State, it was held in some of them that policies of life insurance were not property. The history of Article 4619, as amended, clearly shows that the Legislature intended to give the term 'community property' a broader meaning than it was originally given. Many of the modern decisions hold that a life insurance policy is property. In the case of Grigsby v. Russell, 222 U.S. 149, 32 S.Ct. 58, 59, 56 L. Ed. 133, 36 L.R.A.,N.S., 642, Ann.Cas. 1913B, 863, Mr. Justice Holmes, speaking for the Supreme Court of the United States, said: 'Life insurance has become in our days one of the best recognized forms of investment and self-compelled saving. So far as reasonable safety permits, it is desirable to give to life policies the ordinary characteristics of property.'" See also, Blackmon v. Hansen, 140 Tex. 536, 169 S.W.2d 962; Annotations 114 A.L.R. 545, 168 A.L.R. 342; 1 de Funiak, Principles of Community Property, Secs. 79 and 123; Huie, Community Property Laws as Applied to Insurance, 17 Tex.Law Review 121, 129; Cf. Speer, Law of Marital Rights in Texas, Sec. 373, based on decisions earlier than Womack v. Womack, supra.

3. "Art. 4619. Community property
"Property deemed common property; disposition; disappearance of husband
"Sec. 1. All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife; and all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the con-

trary be satisfactorily proved. During coverture the common property of the husband and wife may be disposed of by the husband only; * * *."
See also, 1 de Funiak, Principles of Community Property, Sec. 63; Huie, Community Property Laws as Applied to Insurance, 17 Texas Law Review, 146 et seq.

4. "It has sometimes been said that whether the insured took out the policy before or during marriage determines whether the policy represents separate or community property, and where one, before marriage, insured his life and after marriage premiums were paid with community funds, the proceeds of the policy were held not to be community property although reimbursement was allowed the community for the amount of the community funds paid for premiums. Actually, since the community property has contributed to the creation of the sum representing the proceeds of the life insurance policy, the community should be entitled to such proportion of such proceeds as the community property used in payment of premiums bears to the whole amount paid in premiums. This is in correct accord with the principles of community property that where community property or labor is used to increase the value of separate property, the value of the increases should be shared by the community." 1 de Funiak, Principles of Community Property, Sec. 79, p. 213; citing, In re Moseman, 38 La.Ann. 219; In re Castagnola, 68 Cal.App. 732, 230 P. 188; In re White, 41 N.M. 631, 73 P. 2d 316; Vernéuille's Succession, 120 La. 605, 45 So. 520; Modern Woodmen of America v. Gray, 113 Cal.App. 729, 299 P. 754; Shields v. Barton, 7 Cir., 60 F.2d 351; In re Coffey's Estate, 195 Wash. 379, 81 P.2d 283.

he intended to make a gift, and if so, whether it was to be effective at once, or effective only in the event he died without changing the beneficiary. See 1 de Funiak, Principles of Community Property, Sec. 79, p. 215.

Was the testimony as to statements made by the insured admissible to explain his action and to help solve that ambiguity? Such statements could have been without the hearsay rule either because a part of the transaction itself or as admissions against interest. In a case similar to the present case on its facts, Aaron v. Aaron, supra, the wife was permitted without objection to testify that the husband stated, "that he was making them (the two policies of life insurance) a gift to the community estate so we could both enjoy them."

Were such statements of the insured inadmissible and prohibited by the statute, Article 3716, Revised Civil Statutes of Texas, Footnote 1, supra? As to her one-half of the community property, the surviving widow is not an heir of her husband, Briggs v. McBride, Tex.Civ.App., 190 S.W. 1123, 1125. Nor would the designated beneficiaries under the policy have taken as heirs or legal representatives of the deceased. This action was not brought by the administrator as was the suit in International Travelers' Ass'n v. Bettis, 120 Tex. 67, 35 S.W.2d 1040. It is true, however, that the widow's answer and claim set forth "that not only does she own an undivided one-half interest in the policy, but, under the laws of inheritance, she is entitled to all of the community assets of herself and her deceased husband; * *." If the widow might be entitled to recover in a dual capacity, either in her own right as a community survivor or as the sole heir of her husband, and if the interests sought to be recovered on such theories are not severable, then, the testimony being inadmissible in her behalf as an heir of her husband it might have to be excluded altogether. Spencer v. Schell, 107 Tex. 44, 173 S.W. 867, 868; Connecticut General Life Ins. Co. v. Banderbee, Tex.Civ.App., 82 S.W.2d 764, 766.

Under our Rules of Civil Procedure, 28 U.S.C.A., however, the case is to be tried on the proofs rather than on the pleadings. De Loach v. Crowley's, Inc., 5 Cir., 128 F.2d 378, 380. For reasons to be presently stated, we think that the widow could in no event recover as an heir, but could recover, if at all, only the interest which she may have owned and of which her husband may have made a fraudulent gift. That was not clear in 1940 when Professor Huie wrote the article, "Community Property Laws as Applied to Life Insurance", 17 Texas Law Review 121, et seq., 18 Texas Law Review 121 et seq. Professor Huie pointed out that in a suit by the widow against the donee, after the death of the husband, the rule in California was that the wife might recover only her one-half of the property donated (18 Texas Law Review 135, citing Dargie v. Patterson, 176 Cal. 714, 169 P. 360; and numerous other California decisions), but that in Washington the entire gift might be invalidated (18 Texas Law Review 136, citing Occidental Life Ins. Co. v. Powers, 192 Wash. 475, 74 P.2d 27, 114 A.L.R. 531; Comment 13 Wash.Law Review 321). Professor Huie pointed out that there was authority in Texas for either position; for the theory that the entire proceeds fell into the community and that the wife was entitled to them as a survivor, there being no children, citing Moore v. California-Western States Life Ins. Co., Tex.Civ.App., 67 S.W.2d 932; and for permitting the wife to recover only her one-half of the donated property when she attacked the husband's gift after the dissolution of the marriage, citing Gutheridge v. Gutheridge, Tex.Civ. App., 161 S.W. 892; Motor Finance Company v. Younger, Tex.Civ.App., 71 S.W.2d 948; cf. Gardenhire v. Gardenhire, Tex. Civ.App., 172 S.W. 726. In the case of Aaron v. Aaron, 173 S.W.2d 310, 315, decided after Professor Huie's article was written, the Court of Civil Appeals of Texas, Texarkana, said:

"It is her contention that she was, upon the death of her husband, entitled to the face value of said policies instead of ½ their face value as award-

ed to her by the judgment of the trial court. As we view the record, the insurance policies being community property, Leon Aaron, the husband, could dispose of his ½ interest in the present or future value to his mother and his act of fraud, as found by the jury, in changing the Beneficiary from appellee to his mother, could only relate to the ½ interest of appellee in their future value at Leon's death."

We conclude, therefore, that in no event could the widow recover in her capacity as an heir of her husband. The insured's statements to his wife were admissible to explain his action and to help solve the ambiguity as to the alleged gift.

*A fortiori,* the District Court erred in refusing to admit testimony from the witness, Mrs. Laura Savage, as to statements made by the insured to or in her presence concerning the policy in question and her testimony as to whether or not the insured stated to her that he had given this policy to his wife or to the community estate. See Cox v. McClave, Tex.Civ.App., 22 S. W.2d 961, 963; Krenz v. Strohmeir, Tex. Civ.App., 177 S.W. 178, 180.

■ The appellees insist that any gift of the policy of insurance to the wife or to the community estate would be inconsistent with the terms of the policy itself providing for the payment of retirement benefits to the insured employee and the consequent reduction of the amount of life insurance.[5] It seems to us, however, that the benefits to the retired employee under this plan would themselves be considered community property, Lee v. Lee, 112 Tex. 392, 247 S.W. 828, 830, 831. In any event the husband could make a gift of the beneficial interest in the policy that would remain at the time of his death. See Huie, Community Property Laws as Applied to Life Insurance, 17 Texas Law Review 133, 134. If there had been a gift to the wife separately, the insurance proceeds at her husband's

death would be her separate property. Evans v. Opperman, 76 Tex. 293, 13 S.W. 312, 313; Martin v. McAllister, 94 Tex. 567, 63 S.W. 624, 625, 56 L.R.A. 585; 1 de Funiak, Principles of Community Property, Sec. 79, pp. 214, 215; Speer, Law of Marital Rights in Texas (3rd ed.) Sec. 421; Huie, Community Property as Applied to Life Insurance, 17 Texas Law Review, p. 123, Note 9. If the policy had been given to the community estate, then with the subsequent premiums paid out of community funds, it would have totally acquired the characteristics of community property.

Even so, according to the insistence of the appellees the husband had the right to control and dispose of the community property without the consent of the wife. "During coverture the common property of the husband and wife may be disposed of by the husband only; * * *." Sec. 1 of Article 4619, Rev.Civil Statutes of Texas, 1925, quoted in Footnote 3, supra. Pursuant to that principle, the Texas Supreme Court has declared that,

"It has been definitely settled in this State that where there is no intention on the part of the husband to defraud the wife, the proceeds of a policy on the life of the husband vest in the beneficiary named in the policy upon the death of the insured, even though the policy was taken out by the husband during coverture and the premiums were paid out of community funds." Volunteer State Life Ins. Co. v. Hardin, 145 Tex. 245, 197 S.W.2d 105, 106, 168 A.L.R. 337.

The appellant concedes that principle, but insists that the facts in this case show a course of conduct designed to defraud the wife. Both parties concede the validity of the principle announced in a very early decision of the Supreme Court of Texas, Stramler v. Coe, 15 Tex. 211, 215, that,

"No consent of the wife is necessary to a valid alienation of such [communi-

---

5. "The amount of the Employee's Life Insurance shall be reduced on each anniversary of the date of the Employee's actual retirement under the Group Contract by an amount equal to ten per cent of the amount of Life Insurance for which the Employee was covered immediately prior to actual retirement, until the amount of Life Insurance is equal to the Annual Rate of Pay of the salary class in which the Employee was covered immediately prior to actual retirement."

ty], property by the husband. But excessive or capricious donations and sales, made with the intent to defraud the wife, would be void; and she would be entitled to her action against the property of the husband and against third possessors."

■ Naming a third person, to whom no obligation is owed, as beneficiary and paying the premiums with community funds amounts to a gift of the community property, Martin v. Moran, 11 Tex.Civ.App. 509, 32 S.W. 904, 905; 1 de Funiak, Principles of Community Property, Sec. 79, p. 214, Sec. 123, p. 353; Speer, Law of Marital Rights in Texas, Sec. 150, pp. 203, 204, Notes 11, 12. There is no consistency in saying that the wife is entitled to one-half the community property and at the same time that the husband may give away such property without restriction, and consequently in all community property jurisdictions some restrictions are imposed on the power of the husband to give away the common property. 1 de Funiak, Principles of Community Property, Secs. 121 and 122. Apparently Texas recognizes the right of the husband to make moderate gifts for just causes, but excessive or capricious gifts made with intent to defraud the wife are void or at least voidable upon her insistence. The principle as applied to insurance policies is well stated in 1 de Funiak, Principles of Community Property, Sec. 123, p. 354:

"But in the states, such as Texas, which recognize the right of the husband to make moderate gifts or donations from the community property, not excessive and not in fraud or injury of the wife's rights, it appears

that a husband may, during marriage, insure his life in favor of his parents or of children by a former marriage, and pay the premiums with community funds, and that so long as he is fulfilling a duty, even though it be only a moral one, to provide for such relatives, and so long as the community funds so expended are not unreasonably out of proportion to the other community assets remaining, there is no fraud upon the wife and she cannot recover any of the premiums so paid or any of the proceeds of such policies for the benefit of the community. But if the course of conduct of the insured husband clearly shows a course of action designed to defraud the wife, the latter can recover the proceeds of a policy made payable to a relative of the husband."

Citing, Jones v. Jones, Tex.Civ.App., 146 S.W. 265; Rowlett v. Mitchell, 52 Tex.Civ. App. 589, 114 S.W. 845; Moore v. California-Western States Life Ins. Co., Tex. Civ.App., 67 S.W.2d 932.

Indeed, appellees' counsel frankly and commendably concede that "though the statute (Sec. 1 of Article 4619, Rev.Civil Statutes of Texas, 1925, quoted in Footnote 3, supra) makes no exception as to dispositions of community property in fraud of the wife, it is clearly a proper and fixed rule that the power to control the community is limited in this respect." [6] Their contention is that only those transfers made with actual intent to defraud are subject to attack and that in this case such intent was not shown. The learned District Judge found in accordance with that insistence, 107 F.Supp. 1, 2, saying:

6. In United States v. Rompel, 326 U.S. 367, 370, 66 S.Ct. 191, 193, 90 L.Ed. 137, counsel made a similar concession and the Supreme Court said:

"While Texas does not have the statutory restrictions on gifts which are to be found in the Louisiana Civil Code, Texas does place some limitations on the husband's power to make gifts of community property. As we said of Texas community property in Hopkins v. Bacon, 282 U. S. 122, 126, 51 S.Ct. 62, 63, 75 L.Ed. 249, the authorities hold 'that if the husband, as agent of the community, acts in fraud

of the wife's rights, she is not without remedy in the courts. (Stramler v. Coe, 15 Tex. 211; Martin v. Moran, 11 Tex. Civ.App. 509, 32 S.W. 904; Watson v. Harris, 61 Tex.Civ.App. 263, 130 S.W. 237; Davis v. Davis, Tex.Civ.App., 186 S.W. 775.)' Appellee also concedes that 'excessive and capricious donations are void,' and that malicious or fraudulent intent need not be established in order that the wife shall have the remedies referred to. Appellee does not question that these are the rules generally applicable to community property in Texas."

"I have heard no evidence whatever of any fraud. That can only be fraudulent which is intended so to be, and may not be presumed. It is an essential element of an action, that such intent must be proved by the party alleging it. In a generic sense, it is either to cheat, or, to deceive another. It is difficult to think of fraud without a false suggestion, or, a suppression of the truth. It cannot exist without a breach of legal or equitable duty. And there can be no fraud by a person who does that which he has a legal right to do."

Article 3996, Rev.Civil Statutes of Texas, provides that, "Every gift, conveyance, assignment, or transfer of, or charge upon, any estate real or personal, * * * given with intent to delay, hinder or defraud creditors, purchasers, or other persons of or from what they are, or may be, lawfully entitled to, shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void." In interpreting that article, the Supreme Court of Texas in Biccochi v. Casey-Swasey, 91 Tex. 259, 42 S.W. 963, 964, said:

"Under this statute we do not consider it material to determine whether the wife could be considered a creditor or not, because she, having a community interest in the land, would be embraced in the language, 'or other persons of or from what they are or may be lawfully entitled to' * * *."

■ We think that the District Judge and appellees' counsel overlooked the distinction between conveyances made for a valuable consideration and voluntary conveyances made without consideration or for inadequate consideration. Such voluntary conveyances are at least *prima facie* or presumptively fraudulent as to existing creditors. 24 Am.Jur., Fraudulent Conveyances, Sec. 26; Dixon v. Sanderson, 72 Tex. 359, 10 S.W. 535. As said in a case where an insolvent grantor sold property to an old friend for about one-third of its value:

"The absence of a bad motive does not relieve the transaction of its fraudulent character. The parties are held to have contemplated the consequences of their act, and this constitutes the fraudulent intent which vitiates the conveyance." Paddock v. Jackson, 16 Tex.Civ.App. 655, 41 S.W. 700, 702.

Again in Speer, Law of Marital Rights in Texas, 3rd ed., Sec. 150, p. 203, it is said:

"His conveyance or disposition of the community may be a legal fraud upon her rights though not intended to wrong her. There may be an utter absence of intended fraud, yet the transaction be voidable. He has no right to make capricious gifts of such property * * *."

In Huie, Community Property Laws as Applied to Life Insurance, 18 Texas Law Review 131, it was said:

"And, in spite of the broad language in some of the cases, there is every reason to believe that, when the matter is finally settled, the extent of the husband's donative power will not be determined solely by an inquiry into his subjective intent. If an intent to defraud is to be required, that intent can be found in the same way that it has been found in the defrauded-creditor cases."

■ In the case of a disposition of community property in fraud of the wife's rights, the wife has a right of recourse, first against the property of the husband, and, if resort to the husband's estate proves unavailing, then, against the person to whom the property has been conveyed or transferred. 1 de Funiak, Principles of Community Property, Sec. 126, pp. 362 and 363; Dixon v. Sanderson, supra. In Volunteer State Life Ins. Co. v. Hardin, 145 Tex. 245, 197 S.W.2d 105, 106, 168 A.L.R. 337, the Court said in part: "* * * the record does not disclose the amount of his [the husband's] estate nor who were the beneficiaries thereof." Again in that case, the Court expressly pretermitted consideration of a case where there were not sufficient other assets to compensate the son claiming the deceased wife's share of the community estate, because he had made no showing that he had not received his full share of the estate. 197 S.W.2d at page

107. In the present case, as has been said, the facts show that the husband left no separate estate and that the amount of the insurance policy was more than one-half of the total community estate. Assuming that the testimony erroneously excluded, together with the other evidence in the case, would have established that the insurance policy was a part of the community estate, then, it seems to us that, in the absence of further testimony, the act of the insured in changing the beneficiary from his wife to his sisters would have constituted an excessive or capricious donation made with at least constructive intent to defraud the wife and would be voidable upon the wife's insistence.

There remains for consideration the extent of the wife's possible recovery. In a somewhat similar case, Aaron v. Aaron, Tex.Civ.App., 173 S.W.2d 310, the wife was permitted to recover one-half of the proceeds of the policy. If the policy were a part of the community estate and the wife had predeceased her husband, her heirs or those claiming through her might have been limited to reimbursement out of the cash surrender value of the policy at the time of the wife's death rather than its proceeds upon the death of the insured. Volunteer State Life Ins. Co. v. Hardin, 145 Tex. 245, 197 S.W.2d 105, 107; See Martin v. McAllister, 94 Tex. 567, 63 S.W. 624. The wife, however, is not restricted to her interest in the premiums paid from the community estate for the policy inasmuch as she has the same interest in the profits made by her husband's trade as she has in the consideration paid. Martin v. Moran, supra; Womack v. Womack, 141 Tex. 299, 172 S.W.2d 307; Huie, Community Property Laws as Applied to Life Insurance, 17 Texas Law Review, 121, 122, 129. The amount of any possible recovery by the wife necessarily depends upon testimony not in the present record as to whether the husband made any gift of the policy and whether any such gift was to the wife separately or to the community estate. See 1 de Funiak, Principles of Community Property, Sec. 79, p. 213, Sec. 123, p. 356. Those questions can be determined by the District Court only upon a consideration of

all of the evidence legally admissible, and we, therefore, forego any further discussion. The judgment is reversed for further proceedings consistent with this opinion.

Reversed and remanded.