William Rice et al. v. John Ward et al.

No. 802.    Decided June 22, 1899.

**1. Limitation—Knowledge by Ancestor Not Imputed.**

Knowledge by the maker of a deed, absolute on its face, that it was intended as a mortgage, will not be imputed to his heirs, devisees, or legatees, so as to subject their action to have the instrument declared a mortgage by limitation or bar it as a stale demand, during the time they remained ignorant of the facts. (P. 707.)

**2. Same—Trust—Repudiation by Trustee.**

Acts by the grantee in a deed absolute on its face, but intended as a mortgage, repudiating the trust and claiming the land absolutely, after the death of the grantor, will not set limitation running against his heirs, devisees, or legatees, so long as they remain ignorant of the trust. (P. 708.)

QUESTIONS CERTIFIED from the Court of Civil Appeals for the Third District, in an appeal from Falls County.

*Finks & Gordon* and *L. W. Goodrich,* for appellants.—The contract does not contemplate a trust relationship, and neither party reposes any trust in the others further than each expects of the other a compliance with the agreement. If there be a trust at all it is essentially one raised by implication of law and not by the act of the parties. This position is supported by all of the authorities to which we have had access. Mills v. Mills, 115 N. Y., 86; Mitchell v. Woodson, 8 George, Miss., 573; Hancock v. Harper, 86 Ill., 451; Cone v. Dunham, 59 Conn., 153; Bobb v. Wolff, 49 S. W. Rep., 1000; McKeen v. James, 27 S. W. Rep., 59; Epinosa v. Gregory, 40 Cal., 58; Green v. Capps, 142 Ill., 286; Morrow v.

Jones, 60 N. W. Rep., 369; 1 Perry on Trusts, sec. 243; 2 Jones on Mort., sec. 1146.

Actual knowledge of the ouster or of the interest affected by it is not necessary. The full requirement of the law is met when the adverse holding is so notorious as to advise all persons evincing an interest in the property, that holding of the party in possession is intended to exclude and does exclude the rest of the world. Cryer v. Andrews, 11 Texas, 177; Anderson v. Stewart, 15 Texas, 289; Hudson v. Wheeler, 34 Texas, 368; Elder v. McCleskey, 70 Fed. Rep., 543; Warfield v. Lindell, 30 Mo., 282; Freeman on Co-Tenancy, sec. 230; McCormack v. Silsby, 82 Cal., 75; Roberts v. Moore, 3 Wall, Jr., 292.

The law charges the heir with the negligence of his ancestor, and refuses to admit his plea of ignorance if that ignorance was the result of the negligence of the person under whom he claims. Tinnen v. Mebane, 10 Texas, 255; King v. Pardee, 6 Otto, 90; Detlor v. Holland, 40 Law. Rep. Ann., 269; Railway v. Mahoney, 40 Law. Rep. Ann., 101; Mann v. State, 116 Ind., 383; Wood v. Carpenter, 101 U. S., 135.

*Geo. Clark, Z. I. Harlan, Rice & Bartlett,* and *Sam. R. Scott,* for appellees.—Fraudulent concealment of a plaintiff's cause of action takes the case out of the bar of the statutes of limitation; and the only limitation to this rule is, that a plaintiff can not excuse his delay in instituting suit on the ground of fraudulent concealment of his cause of action, if his failure to discover it is attributable to his own neglect; and whether such neglect existed in a given case must be determined from the facts of that case. Railway v. Gay, 86 Texas, 608; Calhoun v. Burton, 64 Texas, 515; Brown v. Brown, 61 Texas, 45; Connolly v. Hammond, 58 Texas, 17; Ransome v. Bearden, 50 Texas, 127; Ripley v. Withee, 27 Texas, 17; Munson v. Hallowell, 26 Texas, 475; Cooper v. Lee, 1 Texas Civ. App., 16; Leach v. Wilson, 68 Texas, 353; Golson v. Fielder, 2 Texas Civ. App., 400; 2 Perry on Trusts, secs. 861-867; Story's Eq., sec. 1019; Ingenhuett v. Hunt, 39 S. W. Rep., 310; Book v. Beasley, 40 S. W. Rep., 101; Wiggins v. Wiggins, 40 S. W. Rep., 644; O'Neill v. Capelle, 62 Mo., 202; Perry on Trusts, secs. 883, 884; Angel on Lim., secs. 161, 162; Wood on Lim., secs. 210-212; Lewey v. Coke Co., 166 Pa. St., 536; Machine Co. v. McCaffrey, 139 Ind., 545; Badger v. Badger, 2 Wall., 87; Bailey v. Glover, 21 Wall., 342; Rosenthal v. Walker, 111 U. S., 185, which practically overrules Wood v. Carpenter, 101 U. S., 135, and National Bank v. Carpenter, 101 U. S., 567; Galliper v. Cadwell, 145 U. S., 368; Townsend v. Vanderwerker, 160 U. S., 171.

There being no knowledge even on the part of the ancestor in this case as to any repudiation of the trust, and there being in fact no renunciation of the trust until after suit was brought, and, even according to the testimony and contention of appellants, there being no renunciation until after the death of S. S. Ward, and appellants having concealed the true nature of the transaction from appellees until its discovery in 1895,

the proposition of law submitted by appellants is wholly inapplicable to the facts of this case, for the reason that no cause of action accrued to the ancestor during his lifetime and none to the appellees until they discovered the true facts in 1895.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Third Supreme Judicial District has certified to this court the following statement and question:

"This is a suit on appeal now pending in the Court of Civil Appeals of the Third Supreme Judicial District of Texas.

"The action is one by the appellees as the heirs at law and as legatees and devisees under the will of S. S. Ward, deceased, against the appellants, for a decree declaring a general warranty deed, absolute in form, executed by S. S. Ward to William Rice, of date March 19, 1868, to be in fact a mortgage; and to recover from the appellants the land described in that instrument. In order to a correct understanding of the question herein certified, the Court of Civil Appeals finds the following facts:

"That on the 19th of March, 1868, S. S. Ward executed and delivered to appellant, William Rice, the deed in question, which, upon its face, conveys the land in controversy—1280 acres located in Falls County, Texas. At the time of the execution of the deed, S. S. Ward was indebted to William M. Rice & Co., and the deed was in fact, as between the parties thereto, intended as a mortgage to secure a debt of $600 due the appellant. There are no words of defeasance upon the face of the deed, nor anything recited therein indicating that it was intended as a mortgage; but there is evidence in the record which warrants the conclusion that it was in reality a mortgage to secure the $600 indebtedness.

"S. S. Ward died on the 5th day of May, 1873, and at the time of his death the debt secured by the instrument in question had not been paid off or discharged, and up to the time of his death there was no conduct of the appellants which amounted to a repudiation of their relationship as mortgagees.

"This suit was instituted on the 19th of June, 1895, and the appellees did not, before January of that year, become aware of the fact that the deed in question was a mortgage. They had no knowledge or information before January of 1895 that the deed in question was other than its terms imported. Ward, before his death, had not informed them that the deed was a mortgage, nor did the appellants furnish them any information upon that subject; but there was conduct of the appellants after the death of Ward of a character which had a tendency to lead the appellees to believe that the instrument was in reality an absolute deed and conveyance of the land, and the facts in the record warrant the conclusion that from the time of the death of S. S. Ward to January, 1895, nothing occurred of a nature calculated to excite any inquiry upon the part of the appellees, in order to ascertain that the deed was a

mortgage. The trial court, in effect, submitted to the jury the question of fact, whether the plaintiffs became aware of their rights, or might, by the exercise of diligence, have discovered such rights. And further, in order that the repudiation of the trust on the part of William Rice, if any existed, should affect the plaintiffs, it would be necessary for the plaintiffs to be aware of the trust relation or be chargeable with such notice.

"With this statement and findings, the Court of Civil Appeals of the Third Supreme Judicial District of Texas certifies to the Supreme Court of Texas the following question, which arises from the record in this case:

"Was the knowledge possessed by S. S. Ward that the deed was really intended as a mortgage imputed to the appellees who hold under him as his heirs or as legatees and devisees under his will?

"This question is important, because the appellants have pleaded limitation and stale demand, and assert the proposition that the knowledge possessed by Ward is imputable to the plaintiffs. And, in this connection, it is well to state that there is evidence of conduct upon the part of the appellants shortly after the death of Ward of a nature tending to show a repudiation of their relationship as mortgagees."

We answer the question in the negative.

If, after the death of S. S. Ward, Rice did acts which would have amounted to a repudiation of the trust relation, if the heirs, devisees, or legatees had known of its existence, the fact that Ward, the ancestor, knew that the deed, which was absolute in form, was in fact a mortgage would not put the statute of limitations in operation against the heirs, who were in fact ignorant of the trust which had been reposed in Rice by their father. Chalmer v. Bradley, 1 J. & W., 51; Bennett v. Colley, 2 M. & K., 225.

In the case of Chalmer v. Bradley, above cited, the testator by his will created in his executors a trust in favor of his heirs. The executors repudiated the trust and applied the property to a different use, by which one of them became the owner of it. Forty-five years after the act of repudiation, some of the heirs of the testator brought suit to enforce the trust and to recover the property, alleging that they were ignorant of its existence. The question was whether the plaintiffs were barred of their action by the lapse of time, and the chancellor caused inquiry to be made as to whether or not they knew of the provisions of the will which created the trust in their favor. The question certified in this case was involved in the decision of that, although it was not discussed. In that case the trust was created by the ancestor by will, of which the heirs were ignorant; in this case the trust was created by parol agreement, of which the heirs were ignorant. In both cases, the acts of the trustees were consistent with the rights of the heirs as known to them, but in both cases the acts were inconsistent with the rights of the heirs as known to the ancestor in his lifetime. If the

knowledge of the ancestor that the trust was created is imputable to heirs, then in the case of Chalmers v. Bradley the court did a useless thing when it ordered inquiry into the fact of actual knowledge on the part of the heirs. Before the court would have made such an order, it must have decided that the knowledge of the testator did affect the heir. That case is directly in point and supports our conclusion.

The reason that the statute of limitations begins to run against a cestui que trust when the trustee repudiates the trust and the act of repudiation is known to the beneficiary, is that the latter is thereby notified that the trustee no longer holds the property for him, and if he claims the existence of the trust relation, it becomes his duty to assert his right with reasonable diligence,—that is, within the time prescribed by law for prosecuting such suits, otherwise his claim will be barred by the statute of limitations. If, however, the act of the trustee is not inconsistent with any right of the beneficiary which is known to the latter, then there is no cause for his bringing a suit, there being no violation of any known right. If the heirs of Ward knew that Rice held the property as mortgagee and Rice so used it as to show to them that he claimed it as his own, then it became their duty to assert their right within the time prescribed by the statute. If, however, the heirs did not know of the existence of the trust, how could it be possible that they would sue Rice for using property as his own which appeared to them to belong to him? The knowledge of their father could furnish no reason why they should sue. Acquiescence in the acts of the trustee can not be predicated upon the knowledge of one who is dead at the time the acts are done and which knowledge was not communicated to those who inherited his rights. It is the duty of one who holds property in trust for another to execute the trust and not to conceal either its existence or any material fact connected with it. It comes with bad grace from such a one to say to the heir, "Your father trusted me, which confidence I have concealed from you and violated so long that the trust fund has become mine, the reward of my fraudulent concealment." If the doctrine contended for by the appellant be maintained, then every minor whose parent creates such a trust and dies without communicating the fact to his heir can be defrauded of the right by the trustee using the property as his own and thus setting the statute of limitations in motion against his cestui que trust, who was ignorant of the relation and of his rights.

If Ward, in his lifetime, had created a nuisance upon the land in question for which he was liable to pay damages, and had died, the heirs who inherited the land in ignorance of the existence of the nuisance would not be liable for damages until knowledge of the fact was brought home to them. The knowledge of the ancestor would not be imputed to the heir in such case. Ahern v. Steele, 115 N. Y., 203; Sloggy v. Dilworth, 38 Minn., 179. One who knows of the existence of a nuisance upon his land must, with reasonable diligence, remove it, and, failing to do so, is liable for damages which may result there-

from; but a nuisance not known to the owner can create no liability against him. Knowledge of a fact demands action in both classes of cases, and the absence of it must alike excuse the want of action in each case. We think that this rule of law, which is well established, is in line with and fairly supports our conclusion upon the question certified.