Bud OWENS et al., Appellants,

v.

R. D. OWENS, Appellee.

No. 15744.

Court of Civil Appeals of Texas.

Fort Worth.

Sept. 28, 1956.

Rehearing Denied Oct. 26, 1956.

Storey, Storey & Donaghey and Ney Sheridan, Jr., Vernon, for appellants.

E. W. Napier, Bullington, Humphrey, Humphrey & Fillmore, and Leslie Humphrey, Wichita Falls, for appellee.

RENFRO, Justice.

Appellant Bud Owens has appealed from a judgment denying him relief in a suit wherein he sued his brother R. D. Owens for the reconveyance of an undivided interest in certain land.

As of November 29, 1920, Bud Owens owed R. D. Owens $3,000, represented by note of January 1, 1920, and $300 represented by note of November 29, 1920. On the above date, Bud Owens owned an undivided 8/100ths interest in Blocks Nos. 19 and 20, Red River Valley Lands Subdivision, situated in Wichita County.

Beginning in March, 1922, Bud and R. D. wrote each other several letters concerning Bud's interest in the land. On May 15, 1922, Bud and wife executed an instrument, which on its face purported to be a warranty deed, to R. D.

It is the contention of appellant that the correspondence between the parties con-

stituted a contract which, in effect, conveyed the property in trust to R. D. to hold until the property paid itself out, or until such time as Bud became able to pay off the debt to R. D., less credits from oil payments and rents.

The trial court entered judgment for R. D. Owens, the defendant. Extensive findings of fact and conclusions of law were filed by the trial court.

The court found, in part, that in the light of the correspondence and all of the other facts and circumstances, the effect of the deed was to convey an absolute title in R. D., subject to an equity of redemption if it was exercised within five or ten years. At the time of the transaction, the debt, principal and interest, amounted to $4,100, while the interest conveyed in the deed was worth $2,000. At the time of the transaction the oil production from the interest conveyed was insufficient to pay the interest on the note as it accrued and there was no prospect the interest conveyed would ever be worth any more. At that time water flooding was unknown. In 1954, the land produced more oil because of water flooding. It was only after this increased production that Bud demanded a reconveyance. The court found the record did not show Bud ever had any intention of paying the note until after the water flooding, although since 1942 he had been amply able to pay said notes.

The court concluded as a matter of law the deed was absolute, subject only to Bud's equity of redemption or option to demand reconveyance; that after May 24, 1932, R. D. was under no obligation to reconvey unless there were equitable grounds upon which delay might be excused; that there was nothing in the record to show any equitable grounds excusing the delay; that no effort was made to pay for more than twenty years after the expiration of the ten year period given in the letter of May 24, 1922; and finally that appellant's cause of action was barred by limitation.

Appellant urges reversal because, he says, the court erred in concluding that the deed from Bud to R. D. intended to convey the land in question subject only to Bud Owens' equity of redemption, or option to demand reconveyance within ten years from May 24, 1922, and that if Bud did not pay the obligation on or before May 24, 1932, R. D. was under no obligation to reconvey; the court erred in finding that Bud wrote a letter in which he agreed to the terms of the last letter written to him by R. D.; the court erred in applying the five and ten years statutes of limitation and in holding the two year statute barred any money demand distinct from the action to recover real estate.

R. D. Owens defended the suit on the grounds the deed in question was an absolute conveyance of the property, subject only to Bud's right of redemption; that Bud was guilty of laches in the assertion of any rights he might have had, and that any cause of action was barred by the five and ten years statutes of limitation.

On March 6, 1922, R. D. wrote Bud a letter, enclosing a deed for Bud to sign, telling Bud he needed to borrow some money on the property in question, and informing Bud that when he could "take care of it" (the notes), he would deed the land back to him.

On April 9, 1922, Bud returned the deed with a request that a clause be inserted allowing R. D. to hold the land until "it had paid itself out" or "if I should ever get able I could finish paying it out & redeem it." In the same letter, Bud acknowledged that he could not sell the land for as much as the debt he owed R. D. He also stated in the letter, "You can send me the old notes if you like, *as they are of no use to you* * * *." (Emphasis ours.)

R. D. answered the above letter on April 20, 1922, and informed Bud he could not put the requested clause in the deed because if he did he could not borrow money on the land, and assured Bud he could have

the land back any time he wanted it; also he said, "sure I will *send you the notes.*" (Emphasis ours.)

The deed was signed by Bud and wife and returned to R. D., with a letter dated May 15, 1922. The letter read in part, "we signed the deed & will mail it today also a contract *whitch* the lawyer says will protect us both in case of an accident & you may just hold my notes until it is redeemed."

The proposed contract prepared by Bud's lawyer for R. D. to execute read in part, "And whereas, the said Bud Owens, joined by his wife as aforesaid, conveyed said land and interest to me *in payment of certain advancements* (emphasis ours) made by me to the said Bud Owens to-wit: (then followed description of the two notes heretofore mentioned and a provision concerning credit for royalties, and concluded,) "I further agree, bind and obligate myself * * * to give the said Bud Owens a period of on or before Five (5) years to pay said indebtedness due me and when fully paid * * * then I agree * * * to reconvey said land to the said Bud Owens * * *." R. D. did not execute the proposed contract, but, instead, informed Bud by letter of May 24, 1922, "Like I have told you before I want to get it in shape to borrow some money and like you want it it would not let me have any say so over it until 5 years. And I have given you my word and honor in several letters that any time that you want it back you can have it *weather* it is five or ten years."

R. D. testified that following the last above letter he received a letter from Bud expressing appreciation for the time given him "to take care of it."

The court was justified in finding that Bud agreed to the terms of the May 24th letter.

In view of the expressed intention of both parties that the notes would be returned to Bud; that Bud wanted a written agreement from R. D. that he, Bud, could buy the land back within 5 years, and Bud had inserted the statement in the proposed contract that the deed was in payment of the indebtedness he owed R. D.; that the deed was absolute on its face; that R. D. wrote Bud he could repurchase the property in 5 or 10 years; Bud's acquiescence in R. D.'s letter of May 24th telling him he could repurchase in 5 or 10 years; the circumstances of the parties at the time as shown by the record; the admission by Bud that he owed R. D. more than the land was worth, we cannot say the trial court erred in holding that it was the intention on the part of both parties that the deed was intended to, and did, operate as an absolute conveyance of the land to R. D., subject to Bud's right to repurchase within 5 or 10 years, and that the notes were extinguished and no debt remained.

Under the agreement Bud was not bound to repurchase. He could accept the offer of R. D. to reconvey it within 5 or 10 years if he chose. The final contract, as evidenced by the letters and the deed, imposed no obligation upon Bud to repurchase. It was left optional with Bud whether or not he did a certain thing within a specified time, namely, paid the amount of the original indebtedness and asked for a reconveyance of the land within 10 years from May 24, 1922. This he did not do.

We agree with the trial court there was nothing in the evidence to show any equitable grounds upon which delay after May 24, 1932, may be excused.

The evidence shows clearly that Bud never exercised or offered to exercise his right to repurchase the property during the 10 year period.

We also agree with the trial court's finding that the evidence shows no intention on Bud's part to pay in whole or in part for more than 20 years after the expiration of the 10 year period given in the letter of May 24, 1922.

██ The burden rested on appellant to establish that the deed in question was in-

tended to operate as a mortgage or trust. 29 Tex.Jur., p. 804.

The presumption arises that the instrument is what it purports on its face to be, an absolute conveyance of the land; to overcome this presumption, and to establish its character as a trust, as contended by appellant, the evidence must be clear, unequivocal and convincing, or otherwise the presumption will prevail. See McMurry v. Mercer, Tex.Civ.App., 73 S.W.2d 1087; Perry v. Long, Tex.Civ.App., 222 S.W.2d 460.

We are of the opinion the appellant failed to meet the burden of proof required of him in order to establish the instrument as a mortgage or trust.

The trial court did not err in rendering judgment for the appellee.

If we are mistaken in holding the instrument to be an outright deed with the right on the part of Bud to repurchase within 10 years, and if in fact the transaction amounted to a trust, then we affirm the judgment on appellee's plea of limitation.

From May 24, 1922, R. D. paid taxes on the property, collected rents and royalties, and through an agent was in possession of same continuously.

Bud testified he talked to R. D. twenty years ago or more. He was asked if he talked to R. D. about "holding the land away" from him. He answered that he did but R. D. would not talk about it. Bud testified he got mad and would not go back to talk to R. D. any more. Other testimony by Bud indicates he might have talked to R. D. several times. In any event he said R. D. would not talk to him about the land.

We think the evidence sufficient to show a repudiation of the trust, if ever there was one, and knowledge on the part of Bud of the repudiation. Certainly Bud, by his own testimony, was aware for twenty years before bringing suit of such facts as put him on notice of repudiation. 42 Tex.Jur., p. 752.

A careful study of the entire record convinces us the judgment of the trial court should be affirmed.