Mrs. Lola EWALT et al., Appellants,

v.

White LUNA et al., Appellees.

No. 15446.

Court of Civil Appeals of Texas.

Dallas.

Aug. 8, 1958.

Rehearing Denied Oct. 10, 1958.

Templeton & Gauen, and O. M. Stubble-field, Dallas, for appellants.

John C. Harris and Bruce Graham, Dallas, for appellees.

YOUNG, Justice.

The suit was in trespass to try title, appellants seeking to engraft a trust on a regular recorded chain of title to certain lands adjacent to Lemmon Avenue, City of Dallas. All parties to the controversy (except husbands of certain married women) were grandchildren of H. C. or Cannon Luna and wife Sara E. Luna, both deceased. Eleven of these children instituted the action against White Luna and Walter J. Luna; impleading the others as parties defendant. Upon a trial the jury answered special issues adverse to plaintiffs; whereupon they filed motion for judgment non obstante, which was overruled and upon entry of a defendants' judgment this appeal is taken. The following background of facts is based upon appellants' unchallenged statement of "nature and result of suit".

These common ancestors, Cannon Luna and wife, had come to Texas from Tennessee and settled in the northern part of Dallas County where they were tenant farmers on several tracts of land. Cannon Luna died intestate during the year 1890, survived by his wife Sara and eight children; the widow carrying on as a tenant farmer until the year 1903 when she purchased the land in suit; continuing to live on said property until her death in 1922; meanwhile conveying this tract of land by warranty deed in 1920 to her youngest son E. E. or Emmett Luna. Emmett Luna nev-

**806**

er married and died in 1956 testate; by will bequeathing aforesaid land to his nephews White and Walter Luna, appellees herein.

Appellants contend that the 1903 purchase of property was with funds obtained by sale of personal property, consisting of livestock and increase therefrom and farm implements belonging to the community estate of herself and Cannon Luna; that therefore her deed of 1920 could not convey more than a one-half interest in said property; the amounts claimed by plaintiffs being based on their shares through respective parents, the children of said Cannon Luna. (All of the children of Cannon and Sara Luna were deceased at time of filing of suit.) During the trial it was stipulated among other things that there is a regular recorded chain of title to the property in controversy from sovereignty of the soil to Emmett E. Luna, immediate predecessor in title to defendants, White and Walter Luna, but without prejudice to right of the plaintiffs to engraft a trust on said chain of conveyances. Appellees supply these further statements: That while only three of the plaintiffs have appealed from the judgment of the trial court, there were eleven who were original plaintiffs in trespass to try title; the interest of all amounting to something less than a one-fourth of the full fee simple title to the property involved; and that there was no question but that appellees own the property except for the claims of plaintiffs that Sara E. Luna, widow of H. C. Luna, used community property in 1903 in the purchase of same.

The jury answered "No" to the following special issues:

(1) "Do you find from a preponderance of the evidence that the property involved herein was purchased by Mrs. Sara Luna with funds derived entirely from property, if any, owned at the time of the death of H. C. Luna, the increase, if any, of livestock owned at the time of such death, or property, if any, purchased with funds, if any, from property, if any, or the increase, if any, thereof owned at the time of such death?"

(2) "Do you find from a preponderance of the evidence that the property involved herein was purchased by Mrs. Sarah Luna with funds derived in part from property, if any, owned at the time of the death of H. C. Luna, the increase, if any, of livestock owned at the time of such death, or property, if any, purchased with funds, if any, from property, if any, or the increase, if any, thereof owned at the time of such death?"

Issue No. 3, conditional, and not answered, reads: "What percentage, if any, of the funds used in the purchase of the property involved herein do you find from a preponderance of the evidence, was derived from property, if any, existing at the time of the death of H. C. Luna, the increase, if any, of livestock existing at the time of such death, or property, if any, purchased with funds, if any, from property, if any, or the increase, if any, thereof owned at the time of such death?"

Appellants present four points of error; the first and second complaining of the court's rendition based on the foregoing jury verdict because of no evidence or insufficiency of evidence to support such negative answers; (3) that the "take nothing" judgment based on said jury verdict was against the great weight and preponderance of the evidence and manifestly unjust; and (4) error in overruling of their motion for judgment non obstante veredicto.

Defendants were also given judgment based on their plea of limitation; and in counter points assert (1) "Where appellants had burden of proof, the trial court correctly rendered judgment for appellees on jury findings adverse to appellants; (2) "Judgment of the trial court based on limitation was correctly rendered for appellees (defendants below) for the reason that the evidence conclusively showed any alleged holding in trust had been repudiated some

twenty or more years prior to this suit and appellees' limitation title had ripened."

The evidence adduced by plaintiffs below may be summarized as follows: Miss Minnie Thorp, granddaughter, (originally a plaintiff but dismissed from the suit on voluntary disclaimer) testified that Sara and Cannon Luna owned hogs, cattle, horses, mules, chickens, turkeys and farm implements at the time of his death in 1890; she continuing to see said personal property thereafter when visiting her grandmother until the time the latter bought the land on Lemmon Avenue; Mrs. Sara Luna then telling the witness that she was selling out her stock and farm implements because she was too old to look after as large a farm as she had been running and was getting a smaller place; that after removal to the property in question, seeing no livestock or implements except one cow and buggy horse. Miss Thorp had no recollection of how many cattle, mules or horses her grandmother had on the place during any particular year, knowing that the hogs were raised primarily for meat and not to keep. Mrs. Lola Ewalt, a plaintiff, testified to seeing livestock and farm implements on the place at the time of Cannon Luna's death, his widow continuing to farm and owning the described personal property through subsequent years but did not see any livestock or farm tools after her removal to Lemmon Avenue. Ross Record, age 81, (since deceased) gave similar testimony to ownership by Mrs. Sara Luna of cattle, horses and plow tools on her tenant farm through the years prior to 1903, and of the latter telling the witness that she had "saved up money" by selling this livestock and equipment to buy a place on Lemmon Avenue.

Statements from the Office of Comptroller of Public Accounts, Austin, were placed in evidence by plaintiffs showing personal tax renditions made by H. C. Luna in 1890 and by Sara Luna in subsequent years through 1903 (except for the years 1895, 1899 and 1901 when no assessments appear to have been made). These exhibits disclose that the amount of livestock, hogs, etc., owned by the widow, Sara Luna, varied from year to year. For instance, in 1890, the year of Cannon Luna's death, they had three head of horses and mules, the next year Mrs. Luna rendering eleven head. The number of hogs varied, one head in 1892 to eighteen in 1896; for the years 1902 and 1903, none.[1]

It was developed generally that in 1890 on death of the father, three of the eight children of Cannon and Sara Luna were minors, the youngest, Emmett, being thirteen years of age; the surviving widow assuming their care, support and education.

■■ Defensive testimony consisted of the 1903 warranty deed from named grantors to Sara E. Luna; the 1920 warranty deed from her to son Emmett Luna; along with other relevant instruments of record; subjecting plaintiffs' witnesses however to thorough cross-examination. In this connection appellants say that there was no evidence offered that would support the jury's negative answers to special issues numbers one and two, their own proof being clear, undisputed and corroborated by Ross Record, a disinterested witness; all to effect that Cannon and Sara Luna had livestock and farm implements at time of his death which the widow sold to buy the property in question. But it was their burden to establish by a preponderance of the

---

1. Rendition for these years and values were as follows: *1890:* by H. C. Luna "one carriage, buggy, wagon etc., $20.00; tools, implements, machinery etc., $40.00; three horses and mules, $250.00; Twelve cattle, $85.00; eight hogs, $20.00. *1891:* by Mrs. Luna, two carriages, buggies, wagons etc., $15.00; tools, implements, machinery etc., $30.00; eleven horses and mules, $400.00; two cattle, $20.00; five hogs, $5.00. *1902:* six horses and mules, $200.00; six cattle, $90.00; tools, implements and machinery, $20.00; miscellaneous, $10.00. *1903:* five horses and mules, $300.00; four cattle, $30.00; one carriage, buggy or wagon, $5.00; tools, implements and machinery, $25.00."

evidence that the property in suit was purchased in whole or in part through funds *derived* from farm property or from livestock, or *increase* of livestock owned at the time of Cannon Luna's death and undoubtedly the trust element involved must be clearly traced. Hamilton v. Willing, 73 Tex. 603, 11 S.W. 843. The jury has simply found that appellants' evidence at best did not so preponderate; it being their duty in such event to dispose of the given issues by negative answers. Gulf States Utilities Co. v. Moore, 129 Tex. 604, 106 S.W.2d 256, 257; Daniel v. Watson, Tex. Civ.App., 249 S.W.2d 281.

At any rate the judgment must be affirmed on the bases of limitation, appellees having pled the bar of two, three, five, ten and twenty-five years, the court finding in favor of such bar; and with respect to which appellants do not complain in their amended motion for new trial. In this connection the following facts are either stipulated or undisputed; (1) a regular recorded chain of title from the state to Emmett Luna, to whom the widow Sara Luna had conveyed the property in 1920 (deed recorded in 1929); (2) that appellees hold under will from Emmett Luna; the named parties having been in possession and collecting rents since death of Sara Luna; that appellants have had actual knowledge since 1931 of the deed of conveyance to E. E. or Emmett Luna and the evidence disclosing regular payment of taxes each successive year from 1948 to 1954.

By the provisions of Art. 6646, Vernon's Ann.Civ.St., appellants were on notice that the warranty deed from Mrs. Sara Luna to her son Emmett carried full title to the property therein conveyed and constituted an absolute repudiation of any theory of trust. In consequence, appellants here ought not be permitted to assert claim to the property as against the various pleas of limitations, they having delayed for more than twenty-five years to institute action for its recovery. Owens v. Owens, Tex.Civ.App., 294 S.W.2d 305.

All points of error are accordingly overruled and judgment of the trial court affirmed.

Affirmed.

