Mary Beth Smith MORRIS et vir, et al., Appellants,

v.

TEXAS ELKS CRIPPLED CHILDREN'S HOSPITAL, INC., Appellee.

No. 6415.

Court of Civil Appeals of Texas, El Paso.

April 30, 1975.

Rehearing Granted, original opinion and dissent withdrawn and original dissenting opinion made majority opinion, June 4, 1975.

Second Rehearing Motion Denied June 25, 1975.

Brite, Drought, Bobbitt & Halter, Robert Lee Bobbitt, Jr., and Ralph W. Brite, San Antonio, for appellants.

Carter & Ellis, Joel William Ellis, Harlingen, Hart Johnson, Fort Stockton, for appellee.

## OPINION

OSBORN, Justice.

This case arises from a suit in trespass to try title to eight sections of land in Terrell County. The Appellee claimed a record title and also pled the three, five and ten-year statutes of limitation. After a non-jury trial, the Court entered judgment for Appellee. We reverse and remand to the trial court with directions to enter judgment for the Appellants for title to the eight sections of land involved in this suit and in the interest of justice remand to the trial court for a proper determination of certain claims of the Appellee as subsequently set forth in this opinion.

The basic dispute between the parties arises from the effect and meaning to be given to a joint will executed by Minnie Gay Denny and her husband, W. Denny, on March 17, 1941. The first numbered paragraph of that will provides:

"It is our will and desire that the Survivor of us, W. Denny or Minnie Gay Denny as the case may be shall with the rights and authority below given have and claim in fee simple all the estate of every description real, personal or mixed which either or both of us may own to be occupied, used, enjoyed, conveyed and expended as such Survivor may desire and in the event that we should die simultaneously by accident or otherwise, or upon the death of the Survivor, should there be any estate of our joint estate remaining it is our joint will and desire in event of our joint death, or any estate remaining in the survivor at such Survivor's death, that such estate shall pass to and vest in Mrs. Dorothy Ogle Smith who shall in event of our simultaneous or instant joint death be and is hereby named Executrix and as such and also as Trustee to receive any and all estate, real and personal that may be unexpended or undivided upon our deaths or the death of the Survivor in Trust, however, for the maintenance, rearing and education of our Nieces and Nephews named as follows:

1. Mary Beth Roberts  3. Thos. A. Roberts
2. James Roberts  4. Claudelle Roberts

and direct that the said Dorothy Ogle Smith as such Trustee shall manage the real or personal properties that may come to her under the provisions of this Trust and use the rents and revenues arising from the same for the purposes hereinabove stated, and when the last of the children above named shall have attained 21 years of age the corpus of our estate, if any, then remaining shall pass to and vest in *in* said children share and share alike."

The second paragraph directs the survivor to pay the just and lawful debts of the first to die. The third paragraph appoints the survivor as Executor or Executrix without bond and also provides for an independent administration.

Minnie Gay Denny died on September 24, 1950, and said will was filed for probate in Val Verde County where she resided on October 11, 1950, and was subsequently admitted to probate with W. Denny qualified as Executor. On February 9, 1961, W. Denny executed a new will leaving his estate to

his nephew, except for his ranch in Terrell County, which includes the land here in dispute, which he left to Appellee as an endowment. This 1961 will was admitted to probate in Val Verde County where Mr. Denny resided and a copy was filed of record in Terrell County and the Executor in 1962 and 1963 executed deeds conveying the eight sections to Appellee. The beneficiaries named in the 1941 will, who are Appellants, took the name of Smith after the death of their father and the remarriage of their mother. All of the Appellants testified that they never knew about the 1941 joint will until about a year before this suit was filed in 1973. Neither the 1941 will nor the Minnie Gay Denny probate proceedings was recorded in Terrell County where the land is located. After the Appellee paid the balance due to the State on the original purchase price of six of these sections, patents were issued in the name of Mrs. Minnie Gay Denny in July, 1971.

The basic dispute between the parties concerns whether the joint will is also a mutual or contractual will. "A joint will is a single testamentary instrument which contains the wills of two or more persons, is executed jointly by them, and disposes of property owned jointly, in common, or severally by them. A mutual will is one executed pursuant to an agreement between two or more persons to dispose of their property in a particular manner, each in consideration of the other. If the testators name each other as beneficiaries, the wills are reciprocal. Two or more wills may be mutual without being joint. A joint and mutual will must be the will of two or more persons contained in a single testamentary instrument, jointly executed by them pursuant to an agreement to dispose of their respective estates to each other or to third parties." Vaughn, "The Joint and Mutual Will," 16 Baylor L.Rev. 167 (1964). If in this case the wills are mutual, and the parties contracted as to how their property was to pass upon their deaths, W. Denny as the

survivor could not avoid his contractual obligation by changing the provisions of the joint will in a new will executed after receiving the benefits under the joint will he and his wife executed in 1941.

The problem usually lies in determining whether a joint will is in fact mutual. This may clearly be determined where the parties expressly so provide in the will itself. *Chadwick v. Bristow*, 146 Tex. 481, 208 S.W.2d 888 (1948); *McFarland v. Campbell*, 213 F.2d 855 (5th Cir. 1954). It may also be clearly determined where the extraneous proof establishes an intent or lack of intent to make a contract. *Magids v. American Title Insurance Company*, 473 S.W.2d 460 (Tex.1971); *Atkinson v. Schmidt*, 482 S.W.2d 687 (Tex.Civ.App.—Austin 1972, no writ); *Nesbett v. Nesbett*, 422 S.W.2d 746 (Tex.Civ.App.—Dallas 1967), writ dism'd, 428 S.W.2d 663 (Tex.1968). The most difficult determination, as in this case, is where there is no extraneous proof and there are no express recitations in the will that the parties did or did not have a contractual understanding.

In making that determination, the following rules must be applied:

1. The burden of establishing such a contract is upon the party asserting its existence.

2. No presumptions or inferences will be indulged in favor of a contract.

3. Putting the will in joint form with reciprocal provisions does not alone establish a contract.

4. Use of such words as "we," "us," and "ours" alone does not establish a contract.

5. Execution of the will simultaneously before the same witnesses does not alone establish a contract.

Nevertheless, the will may, by its terms or in its recitals, conclusively prove that it is based upon or was executed in furtherance of an agreement. This is particularly

true where the joint will speaks in all of its paragraphs as the joint act of the testators and where it treats the property of the testators as one, with joint gifts being made to the devisees. *Nye v. Bradford*, 144 Tex. 618, 193 S.W.2d 165 (1946). In that case the testators in a joint will provided that "we do hereby will, bequeath, and devise to the survivor of us" all of the property of which either of the testators shall be seized and possessed, "to be owned and held by said survivor during his or her lifetime, with remainder over to our beloved children, to-wit: Mrs. Florrie May Bradford Nye and Robert Roy Bradford, as is hereinafter more fully set out." The will then proceeded to describe certain particular properties which were to pass to the daughter and to the son. In that case, the Court concluded that such a will could not have been made without an agreement between the testators that it should be so made; thus the joint will was held to also be mutual.

Since the decision in the Nye case, the Supreme Court has had occasion to consider several other cases where the issue turned on the question of whether a joint will was mutual and contractual where no extrinsic evidence influenced the Court's conclusion.

In *Harrell v. Hickman*, 147 Tex. 396, 215 S.W.2d 876 (1948), the Court construed the joint will of T. M. and Maggie Harrell executed in 1936. In that will the parties provided in the second paragraph that "We give, bequeath and devise to the survivor of us, T. M. Harrell or Maggie Harrell, as the case may be, all our property, real, personal and mixed for the sole use and benefit of the survivor of us." In subsequent provisions specific bequests were made to various parties. By the sixth paragraph they provided: "We give, bequeath and devise to Mrs. Ara M. Hickman all the remainder of our lands in Nueces County, Texas, * *." After the death of Maggie Harrell her will was admitted to probate. Subsequently T. M. Harrell married Mrs. Vira A. Harrell and deeded to her the approximately 400 acres of land in Nueces County. This case raised the issue whether the 1936 joint will was also a mutual will under the terms of which the bequest of land to Mrs. Hickman could not be defeated by a deed of the same land to Mr. Harrell's second wife. In construing the will, the Court held that by the second paragraph of the will Maggie Harrell bequeathed and devised to her husband the absolute fee simple title to all of her property. That estate was limited, however, in the fourth paragraph by language which had the effect of converting it into a conditional fee or, as is sometimes called, a defeasible fee, the condition of defeasance being that in the event T. M. Harrell should die seized and possessed of any of the property, then such property should pass to and vest in the various institutions and individuals named in the will. The Court concluded that the survivor in such a case may dispose of the property as he sees fit during his lifetime, but that the survivor cannot make a disposition thereof by will contrary to that made in the joint will. Thus, the deed was upheld even though the Court concluded that the will was contractual since it set forth a comprehensive plan for the disposition of the entire estate of the testators.

In *Murphy v. Slaton*, 154 Tex. 35, 273 S.W.2d 588 (1954), the Court construed a 1928 joint will in which the husband and wife provided that it was their will and desire that the survivor should have all the estate "which either or both of us may own at our death, to be used, enjoyed, occupied and conveyed by such survivor for and during his or her life time, as the case may be, and that upon the death of such survivor any of such estate then remaining shall be divided among the persons following and in the following manner, * * *." Then followed eight separate paragraphs bequesting a half section of·land for life to each of the eight children of the testators with remainder to any surviving grandchildren. The Court concluded that the will as a whole, set forth a comprehensive plan for disposing of the whole estate of either or both parties and that the will was contractual.

A similar result was reached in *Dougherty v. Humphrey*, 424 S.W.2d 617 (Tex.1968). In that case the will provided:

"'It is our will and desire that the survivor of us, J. W. Dougherty or Callie Dougherty, as the case may be, shall, with the rights and authority below given, have all the estate of every description, real, personal, or mixed, which either or both of us may own, to be used, occupied, enjoyed, conveyed and expended by and during the life of such survivor, as such survivor shall desire, and that upon the death of such survivor any of such estate then remaining shall be divided equally among the persons following:'" (Thereafter follows the names of the testators' six children).

The Court pointed out that under the first paragraph of the will J. W. Dougherty was empowered to use the property in any way he chose while he lived. He was given the power to manage the property as he saw fit and could have sold it under the provisions of the will, but he was still bound to leave the property remaining at his death to the six named children. In concluding that the will was contractual, the Court said:

"* * * If the 1939 will is to be found as being contractual in nature, such finding must be drawn from the provisions of the will itself, as the will is the only evidence of the intent of J. W. and Callie Dougherty. Our holding on this point is controlled by *Murphy v. Slaton, supra*. In *Murphy v. Slaton*, this Court stated that a will viewed as a whole can be sufficient evidence to prove that the will was executed pursuant to an agreement. In the case before us now, as in *Murphy v. Slaton*, the will as a whole sets forth a comprehensive plan for disposing of the entire estate of the testator and testatrix. The will not only provides for the disposition of the property upon the death of the first to die, it provides for the disposition of the property remaining at the death of the survivor. It

is clear from reading the will as a whole that it was executed by the parties to carry out a planned disposition of all of the property then owned by both parties. J. W. Dougherty caused the 1939 will to be probated and accepted benefits under it. He was bound by the provisions of the 1939 will as to any property covered by the will and remaining at his death."

Following the rules set forth in these and other opinions, the Courts of Civil Appeals have on numerous instances concluded that wills similar to the one in this case show on their face without any extrinsic evidence that such joint wills are mutual and contractual. *Leopold v. Sochat*, 303 S.W.2d 840 (Tex.Civ.App.—Fort Worth 1957, writ ref'd n. r. e.); *Odell v. Odell*, 306 S.W.2d 914 (Tex.Civ.App.—Fort Worth 1957, writ ref'd n. r. e.); *Holmes v. Holmes*, 447 S.W.2d 423 (Tex.Civ.App.—Waco 1969, no writ); *Riedel v. Kerlick*, 474 S.W.2d 508 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.).

The Appellee relies primarily upon *Nesbett v. Nesbett, supra*, and *Crain v. Mitchell*, 479 S.W.2d 956 (Tex.Civ.App.—Fort Worth 1972, writ dism'd). First, in the Nesbett case there was extrinsic evidence from the attorney who had prepared the will, and he testified that the parties wanted a joint will and that they wanted it where they could leave it to whoever they wanted to after one had died. In affirming the trial court's decision that the joint will was not contractual, the Appellate Court said:

"But it is not necessary to rest this conclusion solely on an interpretation of the will itself. We have the benefit of the testimony of the attorney who drafted it according to the instructions and wishes of Mr. and Mrs. Nesbett and who says that they 'wanted a joint will, wanted it where they could leave it to whoever they wanted to after one had died.' This, in our opinion, is sufficient to support the judgment of the trial court."

In the Crain case, the language used in the will is very similar to that used in the 1941

will of Mr. and Mrs. Denny. But in the Crain case, the Court pointed out that the extrinsic evidence showed that the sole purpose of the joint will was to effect a saving in attorney's fees. In the case before this Court, there is no extrinsic evidence. Thus both the Nesbett case and the Crain case can be distinguished on the basis that there was extrinsic evidence in each case to support the conclusion that those wills were not mutual.

While the survivor of a joint and mutual will may technically revoke the earlier will by a subsequent will, the beneficiaries under such mutual will have a cause of action and may come into Court and enforce their rights. *Tips v. Yancey*, 431 S.W.2d 763 (Tex.1968). In such a situation the law imposes a constructive trust upon the properties of the estate which are held by the devisees under the subsequent will as trustee for the benefit of the beneficiaries under the prior will. *Wyche v. Clapp*, 43 Tex. 543 (1875); *Carstairs v. Bomar*, 119 Tex. 364, 29 S.W.2d 334 (1930).

We sustain the Appellants' first and second points of error and hold that the 1941 will of Mr. and Mrs. Denny was a joint, mutual and contractual will and that Mr. Denny by a subsequent will could not effectively devise and bequeath the land here in dispute to the Appellee.

We next turn to the question of whether or not the Appellee established title under the statutes of limitations. We conclude that it did not. In this case the Appellee held legal title as trustee for the use and benefit of the Appellants. The Appellants did not know of their rights under the 1941 will until approximately one year before this suit was filed, and prior to the filing of suit there had been no conduct upon the part of the Appellee which gave Appellants notice that they were beneficiaries under their aunt's will, or which put them upon notice or inquiry as to their rights under that will.

In *Cole v. Noble*, 63 Tex. 432 (1885), the Court pointed out a distinction as to when a statute of limitations will commence to run in a resulting trust and in a constructive trust and said:

"It is common learning that in cases of resulting trusts, so long as the trust relation is admitted, and there is no adverse holding by the trustee or any one claiming under him, no lapse of time will bar the *cestui que trust. Id.,* 141; *Dow v. Jewell*, 18 N.H., 340.

"In case of a constructive trust, which is born of fraud, and which presupposes from its beginning an adverse claim of right on the part of the trustee by implication, the statute will commence to run from the period at which the *cestui que trust* could have indicated his right by action or otherwise. *Hunter v. Hubbard*, 26 Tex., 537; *Anderson v. Stewart*, 15 Tex., 285; *Carlisle v. Hart*, 27 Tex., 350.

"But even in such cases the trustee must bring himself clearly within the position of a continued and consistent adverse claimant (*Grumbles v. Grumbles*, 17 Tex., 472), and the *cestui que trust* must have no reasonable excuse for failing to prosecute his claim within the proper time. *McKin v. Williams*, 48 Tex., 89."

In *Rice v. Ward*, 92 Tex. 704, 51 S.W. 844 (1899), the Court noted the necessity for some conduct upon the part of the trustee which gives notice to the beneficiary of a repudiation of the trust, and the reason for such requirement. The reasoning of the Court is set forth in clear and concise language as follows:

"The reason that the statute of limitations begins to run against a *cestui que trust* when the trustee repudiates the trust, and the act of repudiation is known to the beneficiary, is that the latter is thereby notified that the trustee no longer holds the property for him, and, if he claims the existence of the trust relation, it becomes his duty to assert his right with reasonable diligence; that is, within the time prescribed by law for prosecuting such suits, otherwise his claim would

be barred by the statute of limitations. If, however, the act of the trustee is not inconsistent with any right of the beneficiary which is known to the latter, then there is no cause for his bringing his suit, there being no violation of any known right. If the heirs of Ward knew that Rice held the property as mortgagee, and Rice so used it as to show to them that he claimed it as his own, then it became their duty to assert their right within the time prescribed by the statute. If, however, the heirs did not know of the existence of the trust, how could it be possible that they would sue Rice for using property as his own which appeared to them to belong to him? * * *."

On at least two occasions Justice Walker, writing for the Texas Supreme Court, has noted that limitations do not begin to run in favor of a trustee and against the *cestui* unless there is no reasonable excuse for failing to prosecute the claim within the proper time, and that there is no duty to investigate a repudiation of a trust until the *cestui* has knowledge of facts sufficient to excite inquiry. *Courseview, Incorporated v. Phillips Petroleum Company,* 158 Tex. 397, 312 S.W.2d 197 (1957); *Andretta v. West,* 415 S.W.2d 638 (Tex.1967).

One leading authority in the field of trust points out that if a cause of action to obtain a constructive trust exists the statute of limitations does not run against it until the injured person knew of the wrong, or had notice of facts which should have brought to him knowledge of the illegality, and that the rights of the *cestui* are not affected where the trustee conceals the unlawful act, or for other reason not involving neglect on the part of the beneficiary notice of it does not come to him. Bogert, Trusts and Trustees, 2nd Ed., § 953, at 493–496.

In *Born v. Bluestein,* 220 S.W.2d 345 (Tex.Civ.App.—Beaumont 1949, no writ), it was claimed that the devisees under a will were barred by the four, five and ten-year statutes of limitations. In rejecting the plea of limitations, the Court said:

" * * * The present suit was filed within a short time after the appellee E. Bluestein learned of the existence of his mother's will and of the facts surrounding his ownership of a portion of her property. We believe the rule is well established that limitation did not begin to run against the sons as beneficiaries under their mother's will until they learned of the existence of the will and the surrounding facts of ownership in 1945. * * * ."

This entire question is discussed at some length in an annotation in 55 A.L.R.2d 220, which notes many of the Texas cases.

On the record before us the evidence is without dispute that the Appellants did not know that they were named as devisees in the 1941 joint will until approximately one year before the present suit was filed in District Court. We find no facts in the record in this case which would charge them with constructive notice or put them upon inquiry prior to their obtaining actual knowledge of the existence of that will.

We do not hold that the statutes of limitations could not begin to run just because the Appellants did not know of their rights under the 1941 will, but because the Appellee as trustee had a duty to disclose its position and was required to repudiate its position of trust, or otherwise give notice to Appellants of their rights. Otherwise, one reaches the results which the Court condemned in *Rice v. Ward, supra,* when it said:

" * * * If the doctrine contended for by the appellant be maintained, then every minor whose parent creates such a trust, and dies without communicating the fact to his heir, can be defrauded of the right by the trustee using the property as his own, and thus setting the statute of limitations in motion against his *cestui que trust,* who was ignorant of the relation and of his rights. * * * "

The Appellants' third point of error is sustained, and we hold that Appellee did

not obtain title to the land in question by limitations. The judgment of the trial Court declaring title to the eight sections of land to be in the Appellee is reversed and judgment rendered divesting Appellee of its title and declaring title to such land to be in the Appellants.

The Appellants by their fourth and fifth points of error contend alternatively that the trial court erred in not granting to them at least the interest in the land owned by Minnie Gay Denny which vested in them under the joint will at the time of her death and the probate of such will, and that they thereby became co-tenants with the Appellee upon the death of Mr. Denny and that Appellee has failed to prove sufficient notice to Appellants to establish any limitation title by one co-tenant against another co-tenant. In view of our holding in this case we do not reach or pass upon the last two points of error which have been presented in the alternative.

This brings us to an issue which was raised by the evidence and a trial amendment in the trial court but which has not been properly presented to this Court by a cross-point of error. The Appellee offered proof in the trial court that it paid to the State as the balance of the purchase price on the land involved the sum of $4,332.04. Proof was also offered that the Appellee paid interest in the amount of $207.98 for five years prior to the time the unpaid balance was paid to the State. In addition, evidence was offered that every three years major repairs were made on the windmills on the ranch and that these ran about $1,000.00 each time, although the last time the repairs were only $390.00.

After all of the evidence had been presented, the Appellee obtained leave of Court to dictate a trial amendment in which it alleged that it had paid to the State of Texas $4,322.04 as the unpaid purchase price, together with interest for five years of approximately $207.00 per year, plus improvements to the windmills of approximately $3,000.00 and sought recovery of such sums in the event of an adverse judg-

ment as to the title to the property in question. In view of the favorable judgment as to title, the judgment was silent as to the amounts sought in the trial amendment and there are no findings of fact or conclusions of law as to those particular items of expense. The Appellee has not filed in this Court any cross-point seeking in the alternative to recover such sums in the event the judgment of this Court be adverse on the title question.

Since we have concluded that the judgment of the trial court is erroneous on the title question, we conclude that in the interest of justice this particular phase of the case should be remanded to the trial court for proper findings and judgment.

We therefore reverse and remand the entire case to the trial court with directions to forthwith enter judgment for the Appellants for title to the eight sections of land here involved and to enter such judgment as is proper under the evidence previously presented concerning the items of recovery sought by the Appellee in its trial amendment.

PRESLAR, Chief Justice (dissenting).

I respectfully dissent and would affirm the judgment of the trial Court granting title to Appellee.

This is a trespass to try title case and Appellee as plaintiff pled the five and ten-year statutes of limitations. The trial court granted judgment for Appellee. Findings of fact and conclusions of law were neither requested nor filed and it must be presumed on appeal that the trial court made such implied findings as were necessary to support the judgment. *Texas Van Lines, Inc. v. Godfrey*, 313 S.W.2d 922 (Tex.Civ.App.—Dallas 1958, writ ref'd n. r. e.). The proof is clear that Appellee met all of the requirements of the five and ten-year statutes of limitations, and, in fact, Appellants do not present points of error questioning the sufficiency of the evidence to sustain such findings. Under this state of the record I see no escape from an outright affirmance of the trial court judgment.

In solving the intriguing question of the construction of the will it seems to me that the majority overlooks the significance of the limitations statutes. Assuming they are correct in the construction of the will, Appellee must still prevail under its limitations claims. Art. 5513, Vernon's Tex.Rev. Civ.Stat.Ann., provides: "Whenever an action for the recovery of real estate is barred by any provision of this title, the person having such peaceable and adverse possession shall be held to have full title, *precluding all claims*." The various statutes of limitations as to the titles to land are statutes of repose intended for the purpose of quieting title in land and differ from the ordinary limitations statutes in that under them one may acquire an absolute title to land. This, even though he be a naked trespasser. We need only to look at the early decisions to see the construction that the Courts of Texas have placed on these statutes to carry out this purpose of quieting title. In the early case of *Burton's Heirs v. Carroll*, 96 Tex. 320, 72 S.W. 581, decided by the Supreme Court of Texas in 1903, certain quotations are pertinent:

"A title by limitation constitutes a chain of title from the sovereignty of the soil; * * *. It being true that a title by limitation may be used as outstanding title for defense of possession merely, and will defeat a regular paper title, it follows that title by limitation is superior to all other claims to that land."

" * * * Full title embraces legal and equitable title to the property, and comprehends that which passed from the government by patent; consequently, if limitation confers full title upon the possessor, then it must divest title out of all other claimants, and vest the same in the possessor under the claim of limitation. * * * * "

Similar expressions may be found in the many decided cases under the limitations statutes. In the case of *Cox v. Elerson*, 437 S.W.2d 312 (Tex.Civ.App.—Amarillo 1968, writ ref'd n. r. e.), the Court quoted from the Supreme Court case of *Brohlin v.*

*McMinn,* 161 Tex. 319, 341 S.W.2d 420 (1960), as follows:

" 'As indicated by the ten-year statute, it is the policy of this state to give effect to an adverse holding, even by a naked possessor, when the adverse holding measures up to the statutory requirements so that title by limitation may be acquired by one who had neither title, color of title, nor muniment of title duly registered. The claimant is required only to have had the exclusive, peaceful and adverse possession of the land under a claim of right for not less than ten years. 2 Tex.Jur.2d, Sec. 116, at p. 227. When the statutory requirements are complied with, title is vested in the adverse claimant as completely as by a deed or patent, and the title that is created constitutes a chain of title from the sovereignty of the soil. *Burton's Heirs v. Carroll,* 96 Tex. 320, 72 S.W. 581.' "

The majority is concerned that the Appellants had no knowledge of the fact that they had inherited this land. Possibly that is true of the many decided cases because many of them involve heirs, but the law makes no exception from the limitations statutes for lack of knowledge. Art. 5518, Tex.Rev.Civ.Stat.Ann., lists the disabilities of persons that suspend limitation. They are: A person, including a married person, under twenty-one years of age, or a person in the military or naval service in time of war, or a person of unsound mind, or a person imprisoned. These are the only statutory disabilities. No case can be found which shows that one's ignorance of his cause of action will not prevent the statute of limitations from running, in the absence of some form of fraud. In fact the decided cases hold to the contrary. *State v. Jones,* 315 S.W.2d 435 (Tex.Civ.App.—Dallas 1958, writ ref'd n. r. e.). And it has been held that the statutes of limitations, barring an action for the recovery of land, run against those who inherit an interest in property whether they are aware of such inheritance or not. *Krause v. Hardin,* 222 S.W. 310 (Tex.Civ.App.—San Antonio 1920, writ

dism'd); *McCook v. Amarada Petroleum Corporation,* 93 S.W.2d 482 (Tex.Civ.App.— Texarkana 1936, writ dism'd); 37 C.J. § 350, p. 969; 2 Tex.Jur.2d Adverse Possession § 53, p. 118. In the McCook case, the Court said:

> "The appellants contend that the statutes of limitation against their action for the recovery of the land could not run against them for the reason that they did not know until 1931 that they inherited an interest in the land in controversy. The trial court found it to be a fact that appellants did not know of their title to the land until about this time. Such fact alone, it seems, will not toll the statutes of limitation in this state. * * * "

In the same case, it was held that to prevent the running of the statute of limitations there must be proof that the claimant fraudulently concealed from the other party knowledge of such party's interest in the land. On this question, our Supreme Court has held that the concealment of the right to a cause of action must be *fraudulent* to prevent the running of the statute of limitations. *Owen v. King,* 130 Tex. 614, 111 S.W.2d 695, 114 A.L.R. 859 (1938); *City of Vernon v. Low,* 158 S.W.2d 857 (Tex.Civ. App.—Amarillo 1942, no writ). Mere silence does not constitute concealment. *Hickok Producing & Development Co. v. Texas Co.,* 128 F.2d 183 (5th Cir. Tex.1942). The gist of the majority holding is in their paragraph: "We do not hold that the statutes of limitations could not begin to run just because the Appellants did not know of their rights under the 1941 will, but because the Appellee as trustee had a duty to disclose its position and was required to repudiate its position of trust, or otherwise give notice to Appellants of their rights." They then cite *Rice v. Ward,* 92 Tex. 704, 51 S.W. 844 (1899), which was a case entirely different from this one in that it was a suit against the fraudulent trustee. Fraud was the basis of the decision. There is absolutely *no* hint of fraud in this case before us. Fraud is also in the case of *Born v. Bluestein,* 220 S.W.2d 345 (Tex.Civ.App.—Beaumont 1949, no writ), cited by the majority. In this regard it should be noted that not only did the Appellee not engage in fraudulent conduct, but that it was entirely without knowledge of the existence of the Appellants, or their claim. It was stipulated by the parties that the probate proceedings of the 1941 will of Minnie Gay Denny were never placed of record in Terrell County where the land is located, so there was no constructive notice to Appellee. It is undisputed that the Appellee did not know of the Appellants or their claim. Yet, the majority decides this case on the basis that the Appellee had a duty to disclose its position, was required to repudiate its position of trust, or otherwise give notice to Appellants of their rights. Appellee is found at fault for not disclosing what it did not know to people it did not know existed. In *Owen v. King, supra,* the Court said:

> "Generally, the question of tolling a statute of limitation arises in cases founded upon fraud, but the rule is not limited in its application to such cases. The fraudulent concealment of a cause of action by the defendant, even though that cause of action may not have arisen in fraud, will avoid the bar of the statute of limitation, where the plaintiff, after exercising ordinary diligence, fails to discover the existence of a cause of action. But the concealment must be fraudulent. Mere failure to disclose a cause of action or mere concealment of a cause of action, when the defendant owes no duty to disclose, is not fraudulent concealment. A defendant has the right to rely upon the statutes of limitation the same as upon any other statutes, and will be denied that right only when his own fraudulent conduct has prevented the other party from discovering his rights. *McFaddin, Wiess & Kyle Land Co. v. Texas Rice Land Co.,* Tex.Civ.App., 253 S.W. 916, affirmed, Tex.Com.App., 265 S.W. 888."

▪ Even if we hold Appellee to the standard of conduct required by the majority, it must prevail, for it has made a clear

repudiation of any trust by acceptance of the deeds giving it full title, placing them of record, and entering into possession. A similar case is *Ewalt v. Luna*, 316 S.W.2d 804 (Tex.Civ.App.—Dallas 1958, writ ref'd n. r. e.). There the widowed mother gave a deed to one son and years later the heirs of her other children sued seeking to impose a constructive trust for their share of the property. Citing the recording statute, Art. 6646, Tex.Rev.Civ.Stat.Ann., which provides that a deed duly recorded shall be taken and held as notice to all persons of the existence of such deed, the Court held:

"By the provisions of Art. 6646, Vernon's Ann.Civ.St., appellants were on notice that the warranty deed from Mrs. Sara Luna to her son Emmett carried full title to the property therein conveyed and constituted an absolute repudiation of any theory of trust. In consequence, appellants here ought not be permitted to assert claim to the property as against the various pleas of limitations, they having delayed for more than twenty-five years to institute action for its recovery. *Owens v. Owens*, Tex.Civ.App., 294 S.W.2d 305."

Appellee placed its deed of record, entered into possession, paid the taxes, did other acts asserting its ownership for a period of ten years prior to suit. It should prevail under both the five and ten-year statutes of limitations. Arts. 5509 and 5510, Tex.Rev. Civ.Stat.Ann.

For the reasons stated, I would affirm the judgment of the trial court.

April 30, 1975.

/s/Stephen F. Preslar
STEPHEN F. PRESLAR, Chief Justice.

## ON MOTION FOR REHEARING

The Appellee's Motion for Rehearing is granted.

Upon further consideration, the dissenting opinion authored by Chief Justice Preslar, filed April 30, 1975, is substituted as the opinion of this Court controlling the disposition of this case. For the reasons stated in such dissenting opinion, the judgment of the trial court is affirmed.

June 4, 1975.

/s/William E. Ward
WILLIAM E. WARD, Associate Justice.

## DISSENT

That which was written in the original majority opinion now becomes my dissent. Further, it appears that what Justice Walker said in *Andretta v. West*, 415 S.W.2d 638 (Tex.1967), concerning the question of limitations, should also be applicable in this case.

I cannot agree that Appellee "was entirely without knowledge of the existence of the Appellants, or their claim." Since the Appellee claims record title to the entire ranch under deeds from the Executor of W. Denny's Estate, Appellee must necessarily be on notice of the provisions of the will of Minnie Gay Denny which passed her interest in the ranch upon her death to W. Denny, and which is a part of the Appellee's chain of title.

Neither can I agree that under the circumstances in this case placing the deeds of record gave Appellants notice of the repudiation of the constructive trust. Such act gave no notice to Appellants of their rights under the 1941 will and did not start the running of limitations. *Davis v. Davis*, 49 S.W. 726 (Tex.Civ.App.1899, writ ref'd).

The plea of not guilty would raise the issue of notice, but in any event, under the record in this case, the issue of notice or lack of knowledge was tried by consent. And while all would agree that limitations would normally begin to run from the time a constructive trust is created, there are exceptions to the rule. *Briggs v. McBride*, 190 S.W. 1123 (Tex.Civ.App.—Amarillo 1916, no writ). Such an exception occurs where the *cestui que trust* has a reasonable excuse for failing to prosecute his claim within a reasonable time. *Cole v. Noble*, 63 Tex. 432 (1885). Such excuse can occur where the trustee lulls the *cestui* into a

belief that the trust continues, and where the *cestui* has no knowledge of the rights created for his benefit and there is no neglect in discovering such rights. *Landram v. Robertson*, 195 S.W.2d 170 (Tex.Civ.App. —San Antonio 1946, writ ref'd n. r. e.); *Briggs v. McBride, supra*; Bogert, Trusts and Trustees, 2d ed., § 953.

While the trial court may not have been compelled to accept as true the Appellants' testimony concerning their first notice of their rights under the 1941 will, the trial court could not find from such testimony notice or knowledge at some earlier time. And until it was established that Appellants did have notice of their rights under the will or knowledge of facts sufficient to excite inquiry, then the statute of limitations would not be applicable.

For the reasons previously stated, I would reverse and remand the case to the trial court with directions to enter judgment as set forth in this Court's original majority opinion in this cause.

June 4, 1975.

/s/Max N. Osborn

MAX N. OSBORN, Associate Justice.